THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMES BAKER, Defendant-Appellant.

Third District     No. 79-463

Opinion filed November 24, 1981.

HEIPLE, J., concurring in part and dissenting in part.

Robert Agostinelli and Frank W. Ralph, both of State Appellate Defender's Office, of Ottawa, for appellant.

Bruce W. Black, State's Attorney, of Pekin (Martin N. Ashley and Raymond F. Buckley, Jr., both of State's Attorneys Appellate Service Commission, of Mt. Vernon, and John X. Breslin and Kenneth Wilhelm, both of State's Attorneys Appellate Service Commission, of Ottawa, of counsel), for the People.

Mr. JUSTICE BARRY delivered the opinion of the court:
■■ On appeal from an order of the circuit court of Tazewell County revoking his probation and sentencing him to a term of imprisonment of 364 days, the defendant, James Baker, raises two issues for our consideration: first, did the defendant effectively waive his right to counsel at the

probation revocation hearing; and second, must the trial court's order that the costs for the services of a public defender are to be taxed against the defendant's bail bond deposit be reversed. With regard to this latter issue, the State and the defendant are in agreement that the statute authorizing payment for legal services out of a defendant's bail deposit is unconstitutional (*People v. Cook* (1980), 81 Ill. 2d 176, 407 N.E.2d 56; Ill. Rev. Stat. 1979, ch. 38, par. 110—7(g)). Accordingly, that portion of the court's order deducting $35 from the defendant's bail deposit to meet the costs of the public defender must be reversed, and we hereby order that the $35 be returned to the defendant.

The State and the defendant are not in agreement on whether the defendant effectively waived his right to counsel at the probation revocation hearing. It is to this issue that we address the balance of this opinion.

On November 2, 1978, the defendant pleaded guilty to the offenses of aggravated assault (Ill. Rev. Stat. 1977, ch. 38, par. 12—2(a)(1)) and unlawful use of weapons (Ill. Rev. Stat. 1977, ch. 38, par. 24—1(a)(1)). Pursuant to plea negotiations worked out between the defendant's counsel, assistant public defender Fred Bernardi, and the assistant State's attorney, the court sentenced the defendant to a 1-year term of probation. The probation was conditioned upon the voluntary commitment of the defendant to the Danville Veteran's Administration Hospital for psychiatric treatment, and upon the serving of 90 days' imprisonment in the Tazewell County jail.

On March 20, 1979, the defendant left the V.A. hospital without first receiving the consent of the adult probation officer of Tazewell County. That same day a petition was filed in the circuit court of Tazewell County charging the defendant with violating the conditions of his probation, and seeking the revocation thereof. The office of the public defender was again appointed to represent the defendant.

The probation revocation hearing was held on May 14, 1979. The defendant was present, as was assistant public defender Fred Bernardi. Prior to the presentation of the State's case, the defendant addressed the court and made a motion to discharge Mr. Bernardi, explaining that he was dissatisfied with Mr. Bernardi's performance. The defendant then informed the court that he had discussed his case with another attorney who had agreed to represent him, and moved for a continuance so that his new attorney could fully familiarize himself with the case. The court initially denied both of the defendant's motions, and directed Mr. Bernardi to cross-examine the State's witnesses. The defendant, however, again objected to Mr. Bernardi's representation, and the following colloquy ensued:

"The Defendant: Your Honor, I would rather that Mr. Bernardi did not cross examine them. He could possibly do more damage to my cause than good.

The Court: All right.

Mr. Bernardi: I will do anything the Court states. I will sit here as a mute or I will be discharged. Whatever the Court determines as necessary. This man does not want me and I don't want to be next to him in this case and harm it if he says he doesn't want me here.

The Court: All right. Again, the motion to discharge counsel, that if, if I didn't allow you to discharge your attorney and would deny you a continuance, you would in effect be submitting here to representing yourself here today. Do you understand that, sir?

The Defendant: Yes sir.

The Court: All right. And full well realizing that, do you wish the, again, the Court to discharge your attorney of record?

The Defendant: Yes.

The Court: All right. Mr. Bernardi, you will be discharged then from the cause at this time. And your motion for a continuance in order to obtain counsel is heard and denied."

The court then directed the State to proceed with its case. The State presented three witnesses who testified that on March 20, 1979, the defendant left the Danville V.A. hospital without permission. The defendant, proceeding *pro se*, did not cross-examine any of the witnesses, nor did he offer any evidence on his own behalf.

The court denied several additional motions by the defendant for a continuance. Upon the State's waiver of closing argument, the defendant recited that he had received no psychiatric treatment at the veteran's hospital. The court thereafter found the defendant guilty of violating his probation.

■■ Section 5—6—4(c) of the Unified Code of Corrections guarantees a defendant accused of violating probation the right to representation by counsel at the probation revocation hearing (Ill. Rev. Stat. 1979, ch. 38, par. 1005—6—4(c)). In *People v. Barker* (1975), 62 Ill. 2d 57, 338 N.E.2d 385, the Illinois Supreme Court stated that in light of the fact that this statutory right to counsel can only be waived knowingly and understandingly (*People v. Hessenauer* (1970), 45 Ill. 2d 63, 256 N.E.2d 791), "[t]he circuit court should not permit the offender to waive counsel unless it determines, by addressing him in open court, that the offender understands: (1) the purpose of the revocation proceeding and the nature of the violation of the condition of probation upon which it is based: (2) that he has the right of confrontation, cross-examination and representation by counsel and that if he is indigent he has the right to appointed counsel; (3)

the minimum and maximum sentence which may be imposed if the probation is revoked." 62 Ill. 2d 57, 59, 338 N.E.2d 385, 387; see Ill. Rev. Stat. 1979, ch. 110A, par. 401(a).

■■ Because an indigent defendant has no right to choose his appointed counsel (*People v. Purvis* (1977), 48 Ill. App. 3d 813, 363 N.E.2d 455; *People v. Gardner* (1977), 47 Ill. App. 3d 529, 362 N.E.2d 14), and because the facts of this case do not warrant the appointment of counsel other than the public defender (Ill. Rev. Stat. 1979, ch. 34, par. 5604), the defendant's decision to discharge his appointed attorney in the face of the court's denial of his motions for a continuance is the equivalent of a decision made at the outset of a probation revocation hearing to proceed *pro se* (*People v. Roberts* (1978), 56 Ill. App. 3d 126, 371 N.E.2d 1284; see *People v. Voight* (1977), 52 Ill. App. 3d 832, 368 N.E.2d 165). Consequently, before such a decision was made the defendant was entitled to receive *Barker*-type admonitions to insure that his decision to proceed *pro se* was made understandingly and with full knowledge of the rights afforded him under the laws of this State.

■■ An examination of the colloquy between the court and defendant Baker at the time the defendant made his decision to discharge attorney Bernardi and proceed *pro se* reveals that the court gave the defendant no *Barker*-type admonitions. The record does not show that the defendant was advised either of the purpose of the revocation proceeding or of the nature of the probation condition violation upon which the proceeding was based. He was not informed he had the right to confront and cross-examine witnesses. (He was ultimately informed during the proceeding that he could cross-examine the State's witnesses, but this occurred after the decision to waive counsel had been made.) He was not informed of the minimum and maximum sentences he could receive if his probation was revoked. On these facts, and particularly in light of the prior acknowledgement by the trial court that the defendant required psychiatric help, we cannot conclude as a matter of law that defendant Baker's decision to waive counsel by discharging attorney Bernardi was knowingly and understandingly made. See *People v. Shaw* (1980), 89 Ill. App. 3d 69, 411 N.E.2d 143; *People v. Myles* (1980), 83 Ill. App. 3d 843, 404 N.E.2d 385; *People v. Brown* (1980), 80 Ill. App. 3d 616, 399 N.E.2d 1374; *People v. Jones* (1976), 36 Ill. App. 3d 190, 343 N.E.2d 644.

■■ In so ruling we necessarily reject the arguments presented by the State, the first being that it was not necessary for the court to give the defendant *Barker*-type admonitions prior to a waiver of counsel because the defendant had no right to appointed counsel at all. (*Gagnon v. Scarpelli* (1973), 411 U.S. 778, 36 L. Ed. 2d 656, 93 S. Ct. 1756.) Although *Gagnon* does indeed stand for the proposition that an indigent defendant is not constitutionally entitled to appointed counsel in probation revoca-

tion proceedings (but see *People v. Voight* (1977), 52 Ill. App. 3d 832, 368 N.E.2d 165), the absence of a constitutional guarantee of a right does not preclude the recognition and protection of the same right by State law. The right of a defendant to counsel in probation revocation proceedings is recognized in both the statutory and decisional law of this State. (Ill. Rev. Stat. 1979, ch. 38, par. 1005—6—4(c); *People v. Barker*.) The statement in *Barker* that an accused probation violator is to be admonished that "if he is indigent he has the right to appointed counsel" (62 Ill. 2d 57, 59, 338 N.E.2d 385, 387) is not mere *obiter dicta*, as the State attempts to convince us, but a clear, definitive pronouncement of the law of the State of Illinois from its highest court. Although the right to appointed counsel in probation revocation proceedings may not be constitutionally mandated, it is nonetheless guaranteed under Illinois law.

There is another reason why we do not find *Gagnon* to be dispositive here. The United States Supreme Court was reluctant to declare in *Gagnon* that indigent defendants in probation revocation proceedings are entitled to appointed counsel because, *inter alia*, "[t]he introduction of counsel into a revocation proceeding will alter significantly the nature of the proceeding" (*Gagnon v. Scarpelli* (1973), 411 U.S. 778, 787, 36 L. Ed. 2d 656, 665, 93 S. Ct. 1756, 1762, which it saw as vastly different from a criminal trial (411 U.S. 778, 789, 36 L. Ed. 2d 656, 665-66, 93 S. Ct. 1756, 1763). In Illinois, however, the probation revocation proceeding, provided for by the Unified Code of Corrections, is in many respects more similar to a criminal trial than it is to the informal, quasi-criminal type of proceeding to which the Supreme Court alluded (Ill. Rev. Stat. 1979, ch. 38, par. 1005—6—4). The very nature of the Illinois proceedings compels appointment of counsel to those who are unable to obtain it, a fact undoubtedly realized by both the general assembly and our Illinois Supreme Court in guaranteeing the right to counsel in such proceedings.

Secondly, the State contends that the defendant in the case at bar was not entitled to receive *Barker*-type admonitions because he was already represented by counsel. In so arguing, the State overlooks the fact that once Baker discharged attorney Bernardi he would not be entitled to representation by another appointed attorney. His decision to discharge his appointed counsel was, therefore, tantamount to a waiver of counsel and a decision to proceed *pro se*. It is this precise situation that triggers the need for admonishments pursuant to the *Barker* dictates.

Finally, however, the State argues that the failure to give the defendant *Barker*-type admonitions was harmless here because the record reveals that the defendant was represented by counsel and aware of the rights contained in those admonitions when he made his decision to waive counsel. (*People v. Varnold* (1977), 45 Ill. App. 3d 724, 359 N.E.2d 1135; see *People v. O'Neal* (1978), 62 Ill. App. 3d 146, 379 N.E.2d 12.) Although

it might be assumed from the record of defendant's April 6, 1979, fitness hearing that he understood the purpose of the impending revocation proceeding and the nature of the violation of the probation condition upon which the future hearing was based, it is not clear that he knew he had the right to cross-examine the witnesses against him before he made his decision to waive counsel. Nor is it clear that he was aware of the minimum and maximum sentences he could receive as a result of his probation violation. With regard to the latter, we will not presume that this defendant was able to remember the details and consequences of his one-year sentence rendered some six months earlier (*cf. People v. Roberts* (1978), 56 Ill. App. 3d 126, 371 N.E.2d 1287); and further, there is absolutely no evidence that the defendant knew that if he violated his probation he was in fact facing a term of imprisonment of that length. Based upon the foregoing, and in light of the fact that there is no evidence attorney Bernardi adequately or appropriately informed the defendant of his rights, we do not believe the failure of the court to give the defendant *Barker*-type admonitions prior to the latter's waiver of counsel can be deemed harmless. For the reasons which we have stated herein, we hold that the defendant did not knowingly, understandingly, and effectively waive his right to counsel. We therefore reverse the order of the circuit court of Tazewell County, and remand for a new probation revocation hearing.

Because of our disposition with respect to the waiver of counsel issue, we do not find it necessary to comment at length about the correctness of the trial court's denial of defendant's motions for a continuance—an issue not argued on appeal. Suffice it to say that were the defendant's right to counsel not violated, and were the issue raised on appeal, we would agree with our dissenting brother that the trial court did not abuse its discretion in denying the defendant's motions.

As previously stated, we also order that the $35 deducted from the defendant's bail deposit as payment for the services of the public defender be returned to him.

Reversed and remanded with directions.

ALLOY, J., concurs.

Mr. JUSTICE HEIPLE, dissenting in part and concurring in part:

The reversal in this case, posited on the majority's opinion that the defendant, James Baker, did not knowingly and understandably waive his right to counsel, is a total misconception of the issue. The learned discussion on waiver of counsel has no more application to this case than

would a discussion on the doctrine of springing uses or the Rule in Shelley's Case.

What are the facts?

Originally, the defendant pleaded guilty to aggravated assault and unlawful use of weapons. He was represented by court-appointed counsel. The trial judge determined his plea was voluntary and advised Mr. Baker of its consequences. He received a sentence of probation. Five months later, the State filed a petition to revoke probation. Again, Mr. Baker was appointed counsel from the public defender's office. On April 6, 1979, at a fitness hearing, the nature of the revocation proceeding and the act giving rise to the State's petition to revoke were explained to the defendant.

The petition to revoke probation came on for hearing on May 14, 1979. The defendant advised the court that he wanted to fire his court-appointed lawyer and have the case continued so that he could hire another lawyer. The prosecutor objected to any continuance, advising the court that the State's witnesses were present. Apparently concluding that the case should not be continued, the trial court advised the defendant that the case was going to proceed to a hearing and that if the defendant fired his lawyer that he would be proceeding that day to a hearing without a lawyer. Defendant fired his lawyer anyway. The hearing went on. The defendant lost and his probation was revoked. He was sentenced to a term of imprisonment of 364 days.

The majority concludes that Baker's choice was made unwittingly and without full realization of its consequences. And, since the possible effects of such an election were severe, they believe that the hearing judge erred in permitting Baker to represent himself without admonishing him of his right to counsel.

Why, it may be asked, should a trial judge advise a defendant of his right to counsel when the defendant has counsel? The suggestion is ludicrous. Supposing a prisoner was offered a full meal which was set down in front of him. Suppose further that the prisoner stated that he wanted to buy his own meal and he would like to go down to the corner restaurant to do so. Suppose further that the jailer told the prisoner that he would have to eat the meal served or go hungry. Suppose further that the prisoner then threw the meal in the wastebasket. Could the prisoner then be heard to complain against the jailer that he had been allowed to go hungry and miss his meal and that the jailer had not explained to him that prisoners have a right to meals? The analogy is apropos.

The defendant did not waive counsel. He fired him. Mr. Baker did not relinquish the right to an attorney; he explicitly terminated that relationship. Waiver of counsel, then, is a nonissue. The defendant had

counsel: when he pleaded guilty; immediately after the revocation petition was filed; at the fitness hearing; and at the beginning of the revocation hearing. Nothing is furthered by a declaration of procedural rules where the rights those rules protect are adequately understood in practice and have been knowingly exercised. It is only the defendant's discharge of counsel knowing the hearing would go on anyway which prevented him from being represented by counsel. This was a self-imposed condition. The issue of whether the judge should have granted defendant's motion for continuance, which neither party addressed, is the only issue this appeal should have presented.

Generally, the propriety of continuing a cause for substitution of counsel is for the trial court's resolution. Absent an abuse of discretion its ruling will not be disturbed. Where a motion for continuance assigns an improper ground as a reason for delay it is not error to deny it. *People v. Smith* (1961), 23 Ill. 2d 512.

On entering his guilty plea, Mr. Baker was adequately informed of the nature of the charges, the allowable sentences, and his right to confront and cross-examine witnesses. The purpose of the revocation proceeding and his conduct giving rise to it were explained to him at the fitness hearing. At the revocation hearing he was allowed to confront and cross-examine witnesses. Because he was disenchanted with his original probation sentence, Mr. Baker asked to fire his lawyer. A court cannot force a lawyer on a party. Yet neither can Mr. Baker employ his desire for new counsel as a weapon to thwart the administration of justice or otherwise embarrass an effective prosecution. *People v. Friedman* (1980), 79 Ill. 2d 341, 347-349.

No abuse of discretion occurred in denying the continuance. During the 2½ months preceding the revocation hearing Mr. Baker never complained of incompetent counsel. No remarks were lodged concerning inefficiency at the fitness hearing. When the continuance motion was made, the revocation hearing had begun. The People had secured the attendance of witnesses for that hearing. Moreover, Mr. Baker's oral motion to continue did not specifically identify new counsel or that attorney's willingness to enter the cause without further delay. (*People v. Koss* (1977), 52 Ill. App. 3d 605, 607.) Baker's general statement that court-appointed counsel "could do more harm than good" provides no articulable basis why his attorney was unfit. The hearing judge was quite justified in denying the continuance.

To expect a trial judge to advise a defendant of rights which have already been made known to him, understood by him, and previously exercised, forsakes substance in the name of formality that is both tedious and inane. Furthermore, it ignores the duty a trial judge possesses in the

movement of cases in a fair and responsible fashion. This is just the sort of appellate ruling that has brought the administration of criminal justice into disrepute.

The judgment of the circuit court deducting $35 from defendant's bail deposit to pay the public defender admittedly should be reversed: that part of the judgment revoking the defendant's probation, however, should be affirmed for the reasons stated.