THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
NORMAN L. TESSIER, JR., Defendant-Appellant.

Fifth District    No. 82—512

Opinion filed May 9, 1984.

Daniel D. Yuhas and Lawrence Bapst, both of State Appellate Defender's Office, of Springfield, and Edwin Anders, law student, for appellant.

J. Lewis Wingate, State's Attorney, of Vienna (Stephen E. Norris and Raymond F. Buckley, Jr., both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE JONES delivered the opinion of the court:

This is an appeal from the circuit court of Johnson County. A jury found the defendant guilty of burglary, felony theft, and misdemeanor theft, and the appeal is from the judgment rendered on the verdict.

On appeal, the defendant asserts (1) he did not knowingly and intelligently waive his right to counsel as required under Supreme Court Rule 401(a) (87 Ill. 2d R. 401(a)), since he was silent throughout the court proceedings, (2) the trial court did not conduct an inquiry into his ability to conduct his own defense, (3) the trial court failed to hold a hearing on his competence to stand trial, and (4) the trial court focused on deterrence rather than rehabilitation when imposing sentence.

On March 28, 1982, the defendant was charged with entering John De's Chevrolet and Oldsmobile dealership in Vienna, Illinois, stealing a car, and then stealing a license plate from Harry Spiller for the stolen car.

On March 29, 1982, the defendant made his first court appearance, without counsel, before Judge Williamson, who read the charges to him. The defendant was then asked by the court:

"Q. Mr. Tessier, do you understand what I have read to you? Answer for the record.

A. (nods affirmatively)

Q. Let the record show that the defendant nodded his head affirmatively. I directed the defendant to answer verbally. The defendant is shaking his head that apparently he's not willing to answer affirmatively or answer in any respect."

The court then asked the arresting officer, Neal Watkins, if the defendant could speak. Officer Watkins said that he could. The court read the possible penalties for the crimes with which the defendant was charged and asked the defendant if he understood. Again, the defendant nodded in affirmance. The defendant was told of his rights and was then asked by the court:

"Q. Are you going to hire your own counsel, Mr. Tessier? Did you hear me? Are you going to hire your own lawyer?

A. (nods negatively) [sic]."

Thereupon, the court appointed public defender Mary Collina to represent the defendant.

On March 31, 1983, Judge Williamson held a preliminary hearing

for the purpose of considering the public defender's motion to withdraw. Defendant was present. Mrs. Collina stated that defendant had informed her that he did not want an attorney, that he wanted to represent himself. Throughout this hearing the defendant refused to answer any questions and stood mute. After hearing the arresting officer tell of defendant's ability to speak, the court permitted the public defender to withdraw as defendant's attorney.

At a preliminary hearing the court heard evidence from the State, but the defendant did not cross-examine, offered no witnesses and again remained mute. Probable cause was found. When defendant was asked how he pleaded to the charges, he remained mute, and a plea of not guilty was entered.

The court conducted a pretrial conference on May 5, 1982, to set a trial date. Judge Williamson advised defendant to retain counsel but the defendant was mute.

On May 12, 1982, the court held a hearing on its own motion in order to make a more adequate determination as to whether or not the defendant had voluntarily and intelligently waived his right to counsel. The trial court felt this was necessary due to the defendant's nonresponsiveness in the courtroom at the March 29 appearance. The court explained to the defendant the law regarding his right to counsel and the significance of the hearing. The defendant was again asked if he persisted in representing himself. The defendant did not respond but sat with his fist clenched up against his face and staring down at the floor.

At this hearing, and in defendant's presence, Mary Collina testified that she had spoken to the defendant on March 31, 1982, and the defendant had told her "in no uncertain terms" that he did not want an attorney because he wanted to represent himself. Mrs. Collina related that she had asked the defendant for certain information relating to his defense and he had refused it, stating that he was going to represent himself, and therefore, was not going to tell her anything about the case or about himself.

Once again in open court the defendant was asked if he waived counsel, and once again he did not respond to the court's question.

Ely Faulkner, sheriff of Johnson City, testified at this same hearing that two days before the defendant's arrest he had seen the defendant in a tent at the intersection of Interstate 24 and Route 146, east of Vienna. The sheriff had asked for the defendant's identification and the defendant had willingly given it. The sheriff also testified that at that same time the defendant asked him if he wanted the defendant to leave. The sheriff told the defendant that he could stay

as long as he was not bothering anyone. The sheriff further testified that the defendant could see, hear, and talk freely and had done so on many occasions including March 26 and again on March 28, when he was arrested. Faulkner mentioned that the only time the defendant was uncommunicative was when he was in the courtroom.

The court then offered the defendant the opportunity to question Sheriff Faulkner, but the defendant once again did not respond. The court thereupon concluded, based on the entirety of the record, that the defendant had voluntarily and knowingly waived his right to counsel.

A jury trial was conducted on July 23, 1982. The defendant appeared without an attorney and was unresponsive and mute during the entire trial proceeding. Officer Neal Watkins testified that after the defendant had been arrested and read his *Miranda* rights, the defendant told him that once Watkins found out who he, the defendant, was, everything would be all right, as the car was his. The defendant did not cross-examine Officer Watkins nor did he offer a defense despite repeated invitations by the court to do so.

Sentencing was set for July 14, 1982. The presentence investigation report indicated that the defendant had refused to speak about his life with the probation officer. At the sentencing hearing, the defendant was again given the opportunity for counsel. This offer was met with no response from the defendant. The court advised the defendant as to sentencing alternatives and asked him if he had anything to say concerning them. The defendant said nothing. The court sentenced the defendant to six years for burglary, four years for felony theft, and 300 days for misdemeanor theft. All of the sentences were to be served concurrently.

■ On appeal, the defendant contends that he did not knowingly and intelligently waive his right to counsel.

Supreme Court Rule 401(a) (87 Ill. 2d R. 401(a)) provides:

"(a) *Waiver of Counsel.* Any waiver of counsel shall be in open court. The court shall not permit a waiver of counsel by a person accused of an offense punishable by imprisonment without first, by addressing the defendant personally in open court, informing him of and determining that he understands the following:

(1) the nature of the charge;

(2) the minimum and the maximum sentence prescribed by law, including, when applicable, the penalty to which the defendant may be subjected because of prior convictions or consecutive sentences; and

(3) that he has the right to counsel and, if he is indigent, to have counsel appointed for him by the court."

At the defendant's initial appearance before the court, the court complied with the provisions of Rule 401(a) by reading to the defendant the nature of the charges against him, the minimum and maximum penalties prescribed by law, his right to counsel and bail provisions. The defendant nodded to the court in the affirmative when asked if he understood the penalties and charges, and shook his head in the negative when asked if he was going to hire his own attorney. Further, at the hearing to determine if the defendant had knowingly and intelligently waived his right to counsel, the public defender testified in defendant's presence that the defendant had expressly told her he did not want an attorney and would handle his own defense.

The record in this case shows that the trial court conducted more than a routine inquiry (*People v. Templeton* (1978), 60 Ill. App. 3d 711, 377 N.E.2d 228) by holding a hearing on its own motion and by repeatedly asking the defendant throughout the trial and sentencing proceedings if he wanted the assistance of counsel and by offering to appoint counsel. The trial court seriously and wholeheartedly recommended to the defendant that he reconsider his decision not to retain counsel. The defendant persisted throughout the entire proceedings in his refusal to answer questions, to accept the offers of help extended by the court and the public defender, to cross-examine the State's witnesses or to offer any defense in his own behalf. He even refused at the sentencing hearing to discuss the sentencing alternatives presented to him. This conduct was elected by the defendant despite his obvious ability to understand and communicate. He is shown to have conversed readily and freely with the sheriff and his officers and with the public defender on many occasions outside the courtroom. It is obvious that the defendant adopted his "stand mute" strategy as a ploy in the face of overwhelming proof of guilt and the total absence of any defense. The ploy will not work. Defendant was obviously trifling in a cavalier manner with the very system designed and provided for his protection. The record furnishes full justification for the finding of the trial court that the defendant had knowingly and understandingly waived his right to counsel, and we affirm that finding.

Since the defendant was firm in his desire to represent himself, the defendant's choice to waive his right to counsel and to proceed to trial *pro se* must be honored although he conducts his defense ultimately to his own detriment. *People v. O'Neal* (1978), 62 Ill. App. 3d 146, 379 N.E.2d 12; *Faretta v. California* (1975), 422 U.S. 806, 45 L. Ed. 2d 562, 95 S. Ct. 2525.

■ The defendant next argues that the trial court abused its discretion when it failed to hold a hearing on the defendant's competence to stand trial which was brought into question by his behavior in court.

A defendant is presumed to be fit to stand trial or to plead and be sentenced. A defendant is unfit if, because of his mental or physical condition, he is unable to understand the nature and purpose of the proceedings against him or to assist in his defense. (Ill. Rev. Stat. 1981, ch. 38, par. 104—10.) When a *bona fide* doubt of the defendant's fitness is raised, the court is to order an independent determination of the issue before proceeding further. (Ill. Rev. Stat. 1981, ch. 38, par. 104—11(a).) Whether a *bona fide* doubt exists is a decision which rests largely within the discretion of the trial court which, unlike a court of review, is in a position to observe the accused and evaluate his conduct. *People v. Murphy* (1978), 72 Ill. 2d 421, 381 N.E.2d 677.

The trial court on its own motion held the very hearing that the defendant contends it did not. The trial court wanted to find out through the hearing if the defendant understood the consequences of his action to waive counsel. The court carefully explained the law and the significance of the law to the defendant. The court also inquired of the defendant's attorney and the sheriff of Johnson County as to the defendant's ability to understand and communicate. The public defender testified that the defendant had stated that he wanted to represent himself "in no uncertain terms." The sheriff testified that the only time the defendant was noncommunicative was when he was in the courtroom.

The defendant's unwillingness to cooperate with counsel cannot be deemed equivalent to the inability to do so. (*People v. O'Neal* (1978), 62 Ill. App. 3d 146, 379 N.E.2d 12.) Furthermore, although the defendant displayed a contempt for the process of the court, we see nothing in the record to indicate or suggest that because of a mental condition or any other reason the defendant could not understand the nature of the proceeding and could not assist counsel in his defense. *People v. Nicks* (1974), 23 Ill. App. 3d 435, 319 N.E.2d 531.

■ Finally, the defendant urges that as he had no prior convictions the trial court abused its discretion by concentrating on deterrence rather than rehabilitation when sentencing the defendant.

Burglary is a Class 2 felony, for which punishment is a fixed term of between three and seven years. (Ill. Rev. Stat. 1981, ch. 38, pars. 19—1(b), 1005—8—1(a)(5).) Theft of property exceeding $300 in value is a Class 3 felony, for which the punishment is a fixed term of between two and five years. (Ill. Rev. Stat. 1981, ch. 38, pars. 16—

1(e)(3), 1005—8—1(a)(6).) Theft of property not exceeding $300 in value is a Class A misdemeanor, for which the punishment is any term less than one year. Ill. Rev. Stat. 1981, ch. 38, pars. 16—1(e)(1), 1005—8—3(a)(1).

The defendant was sentenced to six years for burglary, four years for felony theft, and 300 days for misdemeanor theft. All sentences were to be served concurrently.

Where it is contended that a sentence imposed by a trial judge is excessive, even though such sentence is within the limits prescribed by the applicable law, it will not be disturbed unless it appears that such penalty constitutes a great departure from the spirit and purpose of the law. *People v. McMorris* (1974), 17 Ill. App. 3d 364, 308 N.E.2d 291.

Here it cannot be said that the penalty imposed on the defendant constitutes a great departure from the spirit and letter of the law. Although there was little property damage and no violence, the trial court had no way of knowing about the defendant's character or history due to the defendant's lack of cooperation with the court or the probation officer who prepared the presentencing report. The defendant has no home address and there would therefore be a supervision problem if he were to be placed on probation. He has not expressed remorse for his crime. Accordingly, we find no error in the sentences imposed by the trial court. *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.

For the foregoing reasons, the judgment of the circuit court of Johnson County is affirmed.

Affirmed.

WELCH, P.J., and KARNS, J., concur.