THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DONALD DAVENPORT, Defendant-Appellant.

Second District   No. 84—0191

Opinion filed May 31, 1985.

Walter C. Kilgus and James E. Tusek, both of Nelson, Kilgus, Richey & Tusek, of Morrison, for appellant.

James S. Williams, State's Attorney, of Mt. Carroll, and Charles E. Petersen, of Shearer, Blood, Agrella, Boose & Balog, of St. Charles (Phyllis J. Perko, of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE LINDBERG delivered the opinion of the court:

Defendant, Donald R. Davenport, was charged by citation and complaint with the offense of speeding (Ill. Rev. Stat. 1981, ch. 95½, par. 11—601(b)), in connection with an incident occurring on August 8, 1983. After a jury trial in the circuit court of Carroll County, defendant was found guilty, his post-trial motion was denied, and he was ordered to pay a $150 fine and costs. Defendant has raised five issues on appeal. Because we find no reversible errors, we affirm.

The citation and complaint indicates that defendant was arrested and ticketed for speeding on August 8, 1983, at 7:48 p.m. in the village of Milledgeville, county of Carroll, State of Illinois. Defendant pleaded not guilty and requested a jury trial, which was held on October 31, 1983.

Acting *pro se*, defendant during the *voir dire* conducted by the court exhausted his five peremptory challenges, and the court rejected defendant's two challenges for cause. The only witnesses at trial were the arresting officer, James Haag, and defendant. Distilled to its essence, Haag's testimony was that his radar device, tested before and after the incident, indicated that defendant was traveling 53 miles per hour in a 35 miles per hour zone. In contrast, defendant stated he did not exceed the speed limit, braking as necessary in compliance with the posted speed limit signs. Defendant suggested during trial that he believed Haag was enforcing the speed laws selectively against him because Haag did not like him. In support of his theory, defendant presented testimony that Haag had previously ticketed defendant for speeding. Defendant's testimony also suggested Haag was too zealous in his enforcement of the speed laws.

Defendant was sentenced on November 18, 1983. On November 22, 1983, defendant, through counsel, filed a post-trial motion requesting an arrest of judgment and a new trial. The only issues raised in that motion which are also raised on appeal were: (1) defendant was

not proved guilty beyond a reasonable doubt, and (2) the trial court erred by (a) denying his motions for continuances and (b) by failing to assist him during *voir dire*. Defendant also included the general assignment of error that "other errors occurred in the conduct of the trial, the ruling on Motions, and the introduction of evidence, which are general and non-specific but which require a new trial."

Defendant did not raise the issue of the admission into evidence of defendant's belligerent and profane post-arrest statements in his original post-trial motion, but instead only raised this issue in his amendment to post-trial motion filed on February 17, 1984. That same day, the trial court denied defendant's post-trial motions and defendant on March 2, 1984, filed a timely notice of appeal.

■■ Defendant raises as his first argument that the trial court erred in denying his oral motions for continuances made prior to trial and during the pendency of the trial. The State responds that the trial court did not abuse its discretion in denying defendant's motions.

The right to a continuance is not absolute, and its denial or allowance is a decision to be made within the sound discretion of the trial court. (*People v. Davis* (1970), 45 Ill. 2d 514, 519.) To warrant reversal of the trial court's ruling, the defendant must demonstrate that the denial of the continuance embarrassed the accused in the preparation of his defense so as to prejudice his rights. (*People v. McEwen* (1982), 104 Ill. App. 3d 410, 432 N.E.2d 1043.) The circumstances regarding the continuance motion must be evaluated on a case-by-case basis, including the reasons presented to the trial court at the time the request is denied. (*People v. Lott* (1977), 66 Ill. 2d 290, 297.) The trial court should not refuse to grant a continuance where the ends of justice require that the motion be granted. *Waltz v. Schlattman* (1980), 81 Ill. App. 3d 971, 974, 401 N.E.2d 994, 997.

Although defendant argues he made an oral motion for a continuance prior to the commencement of trial, no evidence of such a motion is contained either in the common law record or in the report of proceedings. Defendant admits to the inadequacy of the record in his appellate brief: "The Motion does not appear on the trial court transcript, having been made prior to the initiation of the trial." Attempting to rectify the inadequate record, defendant's counsel cites his statement made during a hearing on defendant's post-trial motion that "[i]t is my understanding prior to trial the Defendant made a motion to continue to obtain counsel and that motion was denied." This statement cannot be relied upon to establish that the oral motion was actually made, especially where defendant's counsel admitted that his own review of the transcript failed to disclose evidence that the mo-

tion was ever made.

During a hearing on defendant's post-trial motion, the trial court stated it did not recall defendant's ever having made the pretrial motion for a continuance.

> "As to the Court denying Defendant's motion for continuance to obtain counsel, I do not recall frankly any such thing happening. This defendant has appeared before this court before at a jury trial on a speeding case and not too terribly long before this particular case. He represented himself in that case. I would think that this court would remember if he did make a request for counsel because it would have come as somewhat of a surprise to this court. I do not recall him making any such request."

Since no evidence of a motion for a continuance is found in the appellate record and since the trial court expressly stated it did not recall defendant's ever making such a motion, defendant's contention that the trial court committed error in "denying" the motion is unsupported by the record. Even if defendant did file the motion, he asserted no justification either in the trial court or this court to explain his lack of diligence in obtaining counsel. On these facts, therefore, the ends of justice did not require the trial court to have granted defendant a continuance, and the denial of the continuance motion, if the motion ever actually was made in the trial court, would not have constituted an abuse of discretion.

In contrast to the absence of any record reference concerning defendant's first continuance motion, the record does contain a reference to defendant's request for a continuance to allow him time to issue a subpoena to secure the testimony of the county highway commissioner concerning the exact location of speed limit signs at the scene of the speeding violation. When reviewing the trial court's denial of a motion during trial to obtain a witness, the reviewing court must consider the defendant's diligence, the potential witness' testimony, and the defendant's right to a fair trial. (*People v. Williams* (1981), 96 Ill. App. 3d 958, 422 N.E.2d 199.) The allowance or denial of the continuance motion to compel the presence of a witness is within the trial court's discretion. Ill. Rev. Stat. 1981, ch. 38, par. 114—4.

■ Our review of the record convinces us that no abuse of discretion occurred here, because defendant did not act diligently and the potential witness' testimony would not aid defendant in any significant way. As correctly argued by the State, defendant was aware prior to trial both of the location of the offense and that he was

charged with exceeding the 35 miles per hour speed limit. Defendant also knew that his argument at trial would be that the officer clocked his vehicle in a 40 miles per hour zone instead of a 35 miles per hour zone. Knowing these facts prior to trial, defendant should have either deposed the county highway commissioner or subpoenaed him before the trial began. This case does not present a situation where a defendant was surprised by the State's evidence. (See, *e.g., People v. Lott* (1975), 33 Ill. App. 3d 779, 338 N.E.2d 434.) Moreover, the witness' testimony would not aid defendant. At trial, defendant stated he sought to subpoena the commissioner "to prove what the speed limit is at the location on this traffic ticket." Even were this witness to have testified that the speed limit was 40 miles per hour, as was asserted by defendant, the State still would have proved that defendant was traveling 13 miles per hour over the posted speed limit. Accordingly, defendant's witness would not have been material, and thus, defendant's right to a fair trial was not denied when his motion for a continuance was not granted.

■ The second argument advanced by defendant is that the trial court precluded him from effectively using his peremptory challenges by failing to inform him of the number of challenges to which he was entitled. Defendant's argument is not convincing. A *pro se* litigant is not entitled to any special consideration. (*People v. Siler* (1980), 85 Ill. App. 3d 304, 309, 406 N.E.2d 891, 895.) As the court stated in *People v. Tuczynski* (1978), 62 Ill. App. 3d 644, 651, 378 N.E.2d 1200, 1205:

> "If his pro se representation was less effective than if he had retained an attorney, it was attributable to his decision to forego the services of counsel."

See also *People v. Tessier* (1984), 123 Ill. App. 3d 984, 988, 463 N.E.2d 1006, 1010 ("Since the defendant was firm in his desire to represent himself, the defendant's choice to waive his right to counsel and to proceed to trial *pro se* must be honored although he conducts his defense ultimately to his own detriment").

Fatal to defendant's argument is his concession in his appellate brief that a trial court is under no duty to discuss procedure with the parties. The absence of a duty to inform undercuts defendant's contention that the court here erred in not explaining the procedures governing peremptory challenges to defendant. Moreover, defendant's claim of "prejudice" is unsustainable, for defendant exercised his five peremptory challenges allowed by law. (Compare *People v. Nathanial* (1981), 103 Ill. App. 3d 610, 431 N.E.2d 1080 (where trial court committed reversible error by preventing the defendant from using all of his peremptory challenges).) Because the trial court did not prevent

defendant from using his allocated challenges, defendant's claim of prejudice based upon the trial court's failure to guide defendant through the jury selection process is without basis.

■■ The third issue raised on appeal by defendant is that he was denied a fair trial because three jurors could not guarantee that they would act fairly and impartially. The burden rests with the party challenging a juror to establish that the juror possessed a disqualifying state of mind. (*People v. Cole* (1973), 54 Ill. 2d 401.) The mere suspicion of bias in a juror is insufficient to impeach a verdict. (*People v. White* (1980), 88 Ill. App. 3d 788, 410 N.E.2d 1082.) Prejudice is "the forming of an opinion based upon allegations heard outside the courtroom rather than based upon facts heard during the trial." (*People v. Toellen* (1978), 66 Ill. App. 3d 967, 969, 384 N.E.2d 480.) The determination of whether a prospective juror possesses the state of mind enabling him to give to an accused a fair and impartial trial rests in the sound discretion of the trial judge, and his determination will not be set aside unless against the manifest weight of the evidence. *People v. Cole* (1973), 54 Ill. 2d 401, 414.

The report of proceedings revealed that two of the jurors—Richard Picolotti and Richard Buckley—alleged by defendant to have been biased were actually accepted by him. Failure to challenge a juror for cause or to exercise a peremptory challenge waives any objection to that juror. (*People v. Tribett* (1981), 98 Ill. App. 3d 663, 678, 424 N.E.2d 688.) Because defendant accepted these two jurors, he has waived any objection to their presence on the jury. Similarly, defendant's argument concerning Inez Barr deserves no consideration, because defendant exercised his peremptory challenge against her and thus, she did not sit as a juror in this case.

The claim of juror bias raised by defendant which he has not waived concerns juror Nancy Adolph. As both parties concede, the report of proceedings of the *voir dire* is seriously deficient because many of the answers given by the potential jurors are transcribed with the words "response inaudible" or "response unintelligible."

Nonetheless, the appellant has the duty to provide a complete record on appeal. (*People ex rel. Spicer v. Coleman* (1979), 72 Ill. App. 3d 631, 391 N.E.2d 46.) Any doubt arising from the incompleteness of the record will be resolved against the party prosecuting the appeal. (*Hall v. Lyons* (1979), 71 Ill. App. 3d 1023, 389 N.E.2d 1309.) In the instant case, the record discloses that the transcription of the deficient report of proceedings was completed on December 9, 1983. While this date was later than the date on which defendant had filed his initial post-trial motion, the transcript was available to defendant

more than two months prior to the date on which he filed his amendment to post-trial motion and on which the trial court heard arguments concerning his post-trial motion. Despite the availability of the transcript, however, defendant did not raise the deficiency in his amended post-trial motion filed on February 17, 1984. At the hearing on his post-trial motion held that same day, defendant's counsel made one reference to the inadequacy of the transcript.

> "I find that unfortunately the transcript in the situation where the voir dire of the jurors indicates that almost all the responses were inaudible. We therefore have no way of knowing what those responses might have been."

His recognition of the deficiency apparently did not prompt him to rectify the record, for he has cited to no efforts at obtaining an agreed statement of facts or a bystander's report. (See 87 Ill. 2d Rules 612(c), 323(c), (d).) Because defendant elected to file the record without supplementation even though he was aware that the report of proceedings was inadequate, this case is appropriate for invocation of the rule cited previously that the incompleteness of the record will be resolved against the appellant.

Even if the merits of defendant's argument are addressed, the record reveals only one basis upon which defendant challenged Adolph for cause; that her relationship with her future son-in-law, who was employed in the law enforcement field, would render her incapable of deciding the case impartially. The record indicates that Adolph did admit she had a close friend or relative in law enforcement. However, the trial court asked all four potential jurors, including Adolph, whether they would automatically place greater weight on the testimony of a police officer over that of any other witness under oath, and the transcript, while indicating "response inaudible," also shows that the trial court did not ask any followup questions based upon their answers. Common sense suggests that the court would have probed further had any potential juror responded affirmatively. Defendant implicitly concedes this fact by failing to ever argue that Adolph actually stated during *voir dire* that she would weigh the officer's testimony more heavily. The court also asked Adolph individually the same question as was asked of all four jurors together, and again, her answer, although not transcribed, did not prompt the trial court to ask her any followup questions. Adolph also was asked whether she knew of any reason why she would find it difficult to be impartial and her response, although inaudible again, did not provoke further questioning by the court. Finally, responding to defendant's challenge against Adolph for cause because she had a relative or friend em-

ployed in law enforcement, the trial court denied defendant's challenge for cause with one brief statement that cause had not been stated. The certainty with which the court responded to defendant's cause challenge suggests that Adolph's answers did not indicate any bias or prejudice.

The trial court's own recollection of the *voir dire* confirms our interpretation of the record. When confronted in the post-trial motion hearing with defendant's argument that Adolph had given answers which suggested bias, the trial court expressly rejected defendant's interpretation of the *voir dire* record.

> "As to the specific challenges, the one challenge was that the one lady indicated her—perhaps her future son-in-law was a Thomson police officer. I know, and I would remember this matter, that the Court went back to ask the lady if she thought this fact that she might in the future have a son-in-law that was involved in law enforcement would effect [*sic*] her in any way as a juror. She indicated that it would not. Her response evidently was not picked up by the tape, but I can assure you that she indicated it wouldn't bother her anyway, or she would have been excused by this court."

■ The trial court's recollection that Adolph stated she could act impartially puts this case squarely on point with *People v. Cole* (1973), 54 Ill. 2d 401, 415. There, the supreme court stated that suspicion of bias does not amount to evidence of bias, the latter being necessary to establish cause. (*People v. Cole* (1973), 54 Ill. 2d 401.) The juror challenged in *Cole* admitted during *voir dire* that he knew the State's Attorney, the assistant State's Attorney, and one of the State's witnesses, who had been his neighbor and family physician. The juror also admitted he was a friend of the sheriff and explained that another State's witness had a sister who was married to his son. Despite these numerous and potentially prejudicial relationships, the *Cole* court concluded the juror's statements that he could act impartially were sufficient to defeat the defendant's challenge for cause. While the poorly transcribed record here does not contain expressions of impartiality as clear as were present in *Cole*, the trial judge here expressly stated he remembered that the juror did not give any answers which suggested partiality or bias. Because we conclude defendant raised only a mere suspicion of bias which was dispelled by the trial court's post-trial hearing comments, he has failed to sustain his burden, and, therefore, the trial court's denial of defendant's challenge for cause is not against the manifest weight of the evidence. *People v. Cole* (1973), 54 Ill. 2d 401.

■ The next error assigned by defendant is the trial court's admission into evidence of the testimony of the arresting officer as to what defendant said to him immediately after the stop. Apparently anticipating the officer's testimony, defendant initially objected before the officer gave his answers to the State's questions, arguing, "Counsel is trying to lead the witness into something that would influence the jury. The charge is speeding here; not having a conversation with the officer." After the trial court overruled the objection, the officer characterized defendant's attitude after the stop as belligerent. The court sustained defendant's objection to Haag's characterization of defendant's attitude. The officer then testified that defendant, in response to a charge of speeding, asserted, "Bullshit, you fucking asshole." Defendant again objected "to any conversation that the officer and I might have had that does not directly relate to the charge of speeding," but the trial court denied the objection, ruling that the conversation was part of the stop and the arrest.

In response to additional questioning by the State and after another objection by defendant which was characterized as "general" by the trial court, the officer recounted defendant's comments made at the scene of the stop. According to Haag, defendant stated:

> "You are a fucking wimp. If you had guts and weren't a wimp you'd get a job in a real police department. We run assholes like you out the door."

Several questions and answers later, defendant twice more objected on relevancy grounds to the officer's recitation of defendant's comments at the scene, suggesting "that if the officer feels I'm guilty of disorderly conduct, he could have charge[d] me with that." The trial court overruled both objections.

As correctly noted by the trial court, defendant's objections were general and only challenged the relevance of the officer's recollection of defendant's statements. Because the failure to object to evidence giving specific reasons for the objection constitutes a waiver of any error (*People v. Ishmael* (1984), 126 Ill. App. 3d 320, 466 N.E.2d 1334), defendant's objection based upon relevance is the only ground properly presented for this court to consider. The supreme court recently summarized the rules regarding admissible evidence.

> " 'The test of the admissibility of evidence is whether it fairly tends to prove the particular offense charged' [citation], and whether what is offered as evidence will be admitted or excluded depends upon whether it tends to make the question of guilt more or less probable; *i.e.*, whether it is relevant [citation]. A trial court may reject offered evidence on grounds of

irrelevancy if it has little probative value due to its remoteness, uncertainty or its possibly unfair prejudicial nature. [Citations.] The admission of evidence is within the sound discretion of the trial court, and its ruling should not be reversed absent a clear showing of abuse of that discretion." *People v. Ward* (1984), 101 Ill. 2d 443, 455-56.

Defendant argues that testimony concerning his profane language was not relevant to prove the offense for which he was charged and was highly prejudicial because jurors would conclude he possessed no respect for the law. The State responds that the statements are relevant because they show a disrespect for the law and relate to his credibility. Alternatively, the State argues that the comments constitute admissions. In one sense, the testimony that defendant acted belligerently and used profane language suggests that defendant was more likely to have been speeding, as was alleged by the officer. A common reaction for one traveling within the speed limit would be to profess innocence in a polite, nonoffending way. In another sense, however, the comments attributed to defendant arguably have the potential for creating antipathy toward defendant or at least affecting the jurors' impartiality. Because the question is closely balanced, we conclude the trial court's admission of the officer's testimony does not constitute an abuse of discretion.

More importantly, the officer's testimony, even if erroneously allowed, did not contribute to defendant's conviction, and thus, any error in its introduction is harmless beyond a reasonable doubt. Harmless error is discussed together with the last issue raised by defendant—whether defendant's conviction was against the manifest weight of the evidence—because the adequacy of the State's proof establishes both that defendant was proved guilty beyond a reasonable doubt and that any error in the introduction of the officer's testimony did not contribute to defendant's conviction. Initially, the proper standard of proof in this case is whether defendant was proved guilty beyond a reasonable doubt. See *People v. Beil* (1979), 76 Ill. App. 3d 924, 395 N.E.2d 400; Ill. Rev. Stat. 1981, ch. 38, par. 2—12; Ill. Rev. Stat. 1981, ch. 38, par. 3—1.

The State's case was principally based upon the testimony of Officer Haag, who stated that on August 8, 1983, at approximately 7:45 p.m., he was conducting speed enforcement on the stretch of highway coming through Route 88. While set up to clock cars coming in both the north and south directions, he observed a tan Lincoln Continental southbound on Route 88 which appeared to him to be traveling in excess of the 35 miles per hour speed limit. The officer activated his ra-

dar device, which indicated defendant's car was traveling 56 miles per hour, and observed that the car's speed rose to 57 miles per hour and then dropped suddenly to 53 miles per hour. Haag observed that the front end of the car dipped as if the driver had rapidly applied the brakes. The posted speed limit in the stretch where defendant was clocked, Haag stated, was 35 miles per hour. At the time of the clocking, no other traffic was present on the road. During the stop, Haag issued defendant the traffic citation for traveling 53 miles per hour in a 35 miles per hour zone.

On the subject of his training and experience with radar devices, Haag stated that he had been a police officer for seven years, and had received extensive training in the use of speed devices. In 1980, Haag began and completed a training course offered by the manufacturer of the device used to clock defendant. This course required him to use the device in calculating car speeds. Also in 1980, Haag began and completed a course taught by the Illinois State Police on the operation of radar. In 1982, Haag began and completed a 40-hour instructor's course offered by the Department of Law Enforcement and thereby became qualified not only to use the radar device but also to teach others how to use it. Haag testified that on the basis of his training, he was certified to operate the K55 MPH Industries Radar Unit involved in this case. He had been using the radar unit since 1980.

Haag testified that he conducted both an internal and external test for the calibration of the device about 20 minutes before the clocking of defendant. Both tests indicated the device was functioning properly. In addition, Haag testified, he ran the same two tests about 20 minutes after the stop. These tests likewise indicated the machine was functioning properly. Based upon these tests, Haag stated his opinion that the machine was in proper operating condition when defendant's speed was recorded by the radar device.

On cross-examination, Haag indicated he was not precisely certain where the 35 miles per hour sign was located on the highway, but was unwavering in his testimony that defendant was traveling 53 miles per hour in a 35 miles per hour zone inside the village of Milledgeville. Also, Haag stated that from the direction defendant was traveling, he necessarily would have passed three different signs posting the 35 miles per hour limit prior to being clocked. While Haag admitted that the radar device once had been sent to the manufacturer for repairs, he also testified it was tested periodically by Decatur Radar.

Testifying on his own behalf, defendant stated that his car was equipped with a Spectrum unit which was designed to register a re-

sponse when radar units were operating in the vicinity. Defendant testified he was driving 54 miles per hour when he approached a 45 miles per hour sign. Just then, his Spectrum unit registered Haag's radar device. Turning his head to his left as he was passing the 45 miles per hour speed limit sign, defendant saw the police car and continued to reduce his speed to 30 miles per hour. Thereafter, defendant testified, Haag followed him for two miles and only arrested defendant after he had stopped for some cigarettes. On cross-examination, defendant asserted he did not buy the radar detector to avoid a ticket, but rather just to be more aware of his speed. Defendant admitted, however, that the machine did not activate when he exceeded the speed limit, but instead only activated when a radar unit was operating nearby. He explained that he had begun reducing his speed before his unit indicated Haag's radar "[b]ecause I had just received a traffic ticket going into a small community at the edge of town." The State then called Haag in rebuttal, who contradicted defendant by testifying that he did clock defendant while his car was in the 35 miles per hour zone.

In considering testimony such as that recounted above, the reviewing court will not lightly overturn a jury's verdict and will not substitute its judgment for that of the trier of fact unless the evidence is so improbable as to raise a reasonable doubt of defendant's guilt. (*People v. Molstad* (1984), 101 Ill. 2d 128.) Reversal of a guilty verdict is not warranted merely because the jury believed the prosecutor's evidence as opposed to that presented by the defendant (*People v. West* (1981), 102 Ill. App. 3d 50, 429 N.E.2d 599), or because the transcript contains minor inconsistencies which the trier of fact has resolved in favor of the State. *People v. Devine* (1981), 101 Ill. App. 3d 158, 427 N.E.2d 1277.

■ The versions of the facts testified to by Haag and defendant are for the most part irreconcilable. Since the credibility of the witnesses is to be determined by the trier of fact, affirmance of the trial court is warranted on this basis alone. In addition to the officer's testimony, however, the record discloses through Haag that the radar machine clocked defendant at 53 miles per hour. Our review of the evidence convinces us that the State established that the machine was operating properly on the day of the occurrence. Defendant offered no evidence to rebut the State's evidence that the machine was operating properly, and this failure also supports affirmance of the defendant's conviction. (See *People v. Boalbey* (1980), 90 Ill. App. 3d 738, 741, 413 N.E.2d 553, 555.) We conclude, after reviewing the entire record, that defendant was proved guilty beyond a reasonable doubt

of violating section 11—601(b) of the Illinois Vehicle Code. See *Village of Schaumburg v. Pedersen* (1978), 60 Ill. App. 3d 630, 633, 377 N.E.2d 252, 254-55.

Moreover, because of the convincing nature of the State's proof, we conclude any error in the introduction of defendant's profane statements directed at the officer did not affect the jury's determination of his credibility, did not contribute to his conviction, and thus was harmless beyond a reasonable doubt.

The judgment of the circuit court of Carroll County is affirmed.

Affirmed.

HOPF and STROUSE, JJ., concur.