THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
RONALD PELATE *et al.*, Defendants-Appellants.

Fifth District   No. 76-19

Opinion filed May 16, 1977.

Michael J. Rosborough and John H. Reid, both of State Appellate Defender's Office, of Mt. Vernon, for appellants.

William J. Scott, Attorney General, of Springfield, and Mary Jane Reynolds Schaumleffel, State's Attorney, of Vienna (James B. Zagel, Jayne A. Carr, and Bruce D. Locher, Assistant Attorneys General, of counsel), for the People.

Mr. JUSTICE JONES delivered the opinion of the court:

Defendants, Ronald Pelate and William Bauer, were indicted for the offense of escape. (Ill. Rev. Stat. 1973, ch. 38, par. 31—6(a).) Following a jury trial conducted in the circuit court of Johnson County they were found guilty. The trial court sentenced each defendant to a term of imprisonment of not less than one year nor more than three years, such term to run consecutively with sentences of imprisonment already imposed upon defendants. From these convictions defendants appeal.

The record reveals that when the escape occurred defendant Pelate was serving several concurrent terms of imprisonment which were the results of convictions for armed robbery and robbery. At the same time, defendant Bauer was serving several concurrent terms of imprisonment imposed upon convictions of armed robbery and felony theft. Both defendants were transferred from Menard Correctional Center to the minimum security Vienna Correctional Center on February 28, 1974. The defendants were roommates with three others in one of the facility's dormitories. On March 22, 1974, defendants were accounted for at 5:30 and 7:30 p.m. resident checks but were not present or accounted for at the 9:30 p.m. check or anytime thereafter. After a thorough search of the center, prison and local law enforcement officers conducted a search for several days which failed to locate defendants.

The State, in its opening statement, revealed that it would present evidence in its case in chief to relate the precise circumstances under which defendants were apprehended in Utah, including defendant Pelate's "second effort" attempt to elude capture by abducting a 17-year-old boy. In chambers, at the close of the opening statement, both defendants moved for a mistrial. Defendant Pelate claimed that evidence of another offense would be inadmissible because it was not probative of any issue involved in the case and that the prejudice created by the opening statement itself required a mistrial. Defendant Bauer joined in

the motion and additionally asserted that a mistrial was required since testimony pertaining to Pelate's involvement in an abduction was immaterial and highly prejudicial to him since he was not in any way involved in such action, and that the prejudice could not be cured by an instruction to consider that evidence only in connection with Pelate. The court denied the motion. Vigorous objections to the evidence were asserted throughout its presentation. Defendants' renewed motion for mistrial at the close of the State's case was denied.

Two troopers of the Utah Highway Patrol testified at length to the details of a high-speed interstate chase involving several of their cars and a 1973 Chevrolet which was occupied by defendants. The chase, which occurred on April 9, 1974, began when a trooper on Interstate 15, near Salt Lake City, attempted to pull over the Chevrolet because it matched the description of a car reported as stolen. The troopers testified, *inter alia*, that during the chase the vehicles reached speeds in excess of 110 miles per hour, that traffic was rather heavy at this time, that defendants' vehicle switched lanes constantly and that defendants' car eventually crashed when it failed to negotiate an exit ramp and collided with a guard rail. After the car crashed, defendants exited from different doors and ran in opposite directions. Trooper James Turner testified that he gained custody of defendant Bauer only after he threatened to shoot him if he did not halt. Defendant Bauer told him that his name was Donald Peterson. The other trooper, Dwain Loveless, stated he pursued defendant Pelate in a footrace which took them into an industrial park area. He further related that Pelate got into a pickup truck occupied by a young boy and forced him to drive away although Loveless had identified himself as a police officer and commanded them to stay where they were. Defendant Pelate was only apprehended after another chase through Salt Lake City in which the police were aided by the efforts of Trooper Loveless, who had jumped into the bed of the pickup truck. Trooper Loveless testified that defendant Pelate gave his name as Eric Welsch when he was finally under police control.

The State also called Robert Heinz, the abduction victim, to testify. He further related the details of the chase involving defendant Pelate and himself. He testified that Pelate placed his hand under his jacket as if he had a gun and told him to drive or be shot. The threat was repeated at critical junctures of the chase.

At the close of its case, the State asked for an *in camera* offer of proof by the defendants of the evidence they wished to introduce on the defenses of compulsion or necessity. The State represented to the court that such an offer was required to determine if there was any admissible evidence on such a defense because the California courts which recognized the availability of a limited defense of necessity to the crime

of escape required such offer. (Presumably relying upon *People v. Lovercamp* (1974), 43 Cal. App. 3d 823, 118 Cal. Rptr. 110.) The court did require a full offer of proof in evidentiary form.

The defendants' offer of proof was basically presented by their own testimony and the testimony of two other prison inmates, Leroy Stickler and Malcolm Little, Jr. We shall summarize the testimony.

Defendant Bauer's testimony revealed a history of persecution by the Black Disciples, a black Chicago street gang which also exists within the penitentiary system. Bauer, who is caucasian, testified that a pattern of hostilities began in 1971 after his support of the actions taken by the warden of Pontiac Correctional Center in the wake of a disturbance there in October received television and newspaper coverage. Apparently as a consequence of his resultant unpopularity with this gang, Bauer's life was threatened several times and he was attacked in December of 1971 by a black inmate armed with a knife. Between August 28, 1973 and February 28, 1974, while incarcerated at Menard Correctional Center, Bauer was allegedly threatened several times and involved in several physical confrontations with black gang members.

Bauer related that approximately 50 to 70 persons who had been in Pontiac in 1971 were in the minimum security Vienna Correctional Center when he was transferred there February 28, 1974. A group of Black Disciples threatened him on March 12, 1974. On March 20, 1974, two days before the escape, three Black Disciples who were roommates with Bauer threatened to harm him when they got an opportunity to because they felt he was a "stool pigeon." Bauer testified he was afraid to complain about the threats because of the possibility of more reprisals, and he became convinced that he must escape to avoid the danger. He further testified that after he was apprehended and returned to Menard several other attacks were made upon him.

Malcolm Little, Jr., and Leroy Stickler testified concerning their observations of attacks upon the defendants that were perpetrated by black gang members. These attacks were subsequent to their return to the penitentiary. Malcolm Little also explained that inmates in the Vienna facility sometimes are afraid to report threats or attacks because information concerning such reports often is relayed to the inmates by other prisoners with access to such complaints. The end result of a complaint if this occurs is more abuse. Leroy Stickler also testified concerning his knowledge of sexual advances and threats made toward defendant Pelate since his return to the penitentiary.

Ronald Pelate's testimony in the offer of proof contained a detailed explanation of three gang assaults made upon him while he was at Menard Correctional Center prior to his transfer to Vienna and his

subsequent escape. These attacks resulted in substantial injuries. He believed the attacks were made by members of the Black Disciples or another gang, Metro East, in retaliation for his refusal to join offshoots of either gang which were open to caucasians. Pelate related further that he had been involved in fights while at the Menard facility to repel homosexual assaults, and that on March 22, 1974, the night of the escape, he had again been forced to take evasive action to elude three blacks who had made known their intention to commit a homosexual assault upon him.

The trial court denied the offers of proof stating that no imminent danger appeared to be shown and that matters which occurred at institutions other than Vienna were incompetent and irrelevant. In addition, the court noted that defendants made no effort to turn themselves back in to prison officials after reaching safety. Since the exclusion of the offered testimony left defendants with nothing to assert in their defense, no evidence was put before the jury by defendants.

Defendants' first contention in this appeal is that they were denied their right to a fair trial because the trial court required them to make an offer of proof of their defense prior to their presentation of any evidence and then ruled that none of the evidence, which related to the affirmative defenses of compulsion and necessity, could be put before the jury. This contention was advanced in defendants' briefs at a time prior to the filing of an opinion by our supreme court which is favorable to defendants' position and dispositive of this issue on appeal.

Prior to the time of the trial in this case, no Illinois court had explicitly recognized that there were any circumstances under which a defense of compulsion or necessity could be asserted as a defense to the crime of escape from a penal institution. However, the trial court was made aware of a California case, *People v. Lovercamp*, which held that the defense of necessity was available to prisoners prosecuted for escape in certain situations, and it appears that the court proceeded on the assumption that such defense could also apply in Illinois.

The court in *Lovercamp* held that a defense of necessity was available if the following conditions existed:

"(1) The prisoner is faced with a specific threat of death, forcible sexual attack or substantial bodily injury in the immediate future;

(2) There is no time for a complaint to the authorities or there exists a history of futile complaints which make any result from such complaints illusory;

(3) There is no time or opportunity to resort to the courts;

(4) There is no evidence of force or violence used towards prison personnel or other 'innocent' persons in the escape; and

(5) The prisoner immediately reports to the proper authorities when he has attained a position of safety from the immediate threat." 43 Cal. App. 3d 823, 831-32, 118 Cal. Rptr. 110, 115.

It is apparent from the reasons stated by the trial court for refusing the offers of proof that the trial court felt that all of the conditions of *Lovercamp* must appear to be present in order to entitle defendants to present evidence relating to such a defense to the jury. Subsequent to the time this case was argued and taken for opinion our supreme court filed its opinion in *People v. Unger* (1977), 66 Ill. 2d 333, 362 N.E.2d 319, affirming the decision of the Appellate Court for the Third District (*People v. Unger* (1975), 33 Ill. App. 3d 770, 338 N.E.2d 442). In light of its holding we are compelled to conclude that the trial court erred in refusing to allow defendants to present their evidence and have the jury instructed on the defense theory of necessity (Ill. Rev. Stat. 1973, ch. 38, par. 7—13).[1] Consequently, we must reverse the defendants' convictions and remand this cause for a new trial.

Necessity is a statutory affirmative defense. (Ill. Rev. Stat. 1973, ch. 38, par. 7—13.) The statute defines it as follows:

"Conduct which would otherwise be an offense is justifiable by reason of necessity if the accused was without blame in occasioning or developing the situation and reasonably believed such conduct was necessary to avoid a public or private injury greater than the injury which might reasonably result from his own conduct."

In *People v. Unger*, at the time of the escape offense, defendant was confined at the Illinois State Penitentiary in Joliet, Illinois. On February 22, 1972, defendant was transferred to the prison's minimum security honor farm. Defendant walked off the farm on March 7, 1972, and was apprehended two days later in a motel room in St. Charles, Illinois.

Defendant Unger presented testimony at trial in an attempt to support defense theories of compulsion and/or necessity. He testified that prior to his transfer to the farm, he had been threatened by an inmate brandishing a six-inch knife in an attempt to force defendant to engage in homosexual activities. He stated that he did not report the incident to the authorities due to his fear of retaliation. Unger further testified that after his transfer to the honor farm he was assaulted and sexually molested by three inmates whom he named at trial. This attack was alleged to have occurred on March 2, 1972, and from that date to the date of his escape defendant

---

[1] The court in *Unger* noted that a defense of compulsion under Ill. Rev. Stat. 1975, ch. 38, par. 7—11 would only be applicable "in the unlikely event that a prisoner was coerced by the threat of imminent physical harm to perform the specific act of escape ° ° °." (See *People v. Davis*, 16 Ill. App. 3d 846, 306 N.E.2d 897; *People v. Terry*, 30 Ill. App. 3d 713, 332 N.E.2d 765, cited by the court in support of this view.) The evidence in the offer of proof below shows that no such situation was involved here.

received additional threats from inmates he did not know. On March 7, 1972, the date of escape, defendant testified he received a call on an institution phone from a caller whose voice he didn't recognize. This caller threatened him with death because he had heard that defendant had reported the previous assault to prison officials. Defendant said he left the farm to save his life and intended to return once he found someone who could help him.

At his trial defendant Unger tendered jury instructions predicated upon the affirmative defenses of compulsion and necessity. The court refused these instructions and gave an instruction which told the jury that the reasons given for the alleged escape were immaterial and not to be considered by them as in any way justifying or excusing the offense.

The supreme court held that it was reversible error for the trial court to rule as it did on the instructions and that defendant was entitled to submit a defense of necessity to the jury. Two well-established rules were essential to their reaching this conclusion. One is that a defendant, as well as the State, is entitled to appropriate instructions presenting his theories of the case to the jury if such theories are supported by the evidence. The second is that if defendant raises the issue of an affirmative defense by presenting "some evidence" thereon (Ill. Rev. Stat. 1975, ch. 38, par. 3—2), he is entitled to an instruction on such theory. The court found that the testimony of defendant was clearly sufficient to raise the affirmative defense of necessity. The gist of that defense, as noted by the court, is that a defendant is forced by the situation confronting him to choose the lesser of two evils. The supreme court felt that defendant's testimony, if believed, demonstrated that such choice was thrust upon him by the situation which arose from the actual and threatened homosexual assaults and fears of reprisal.

Of particular significance here is the fact that the supreme court in *Unger* explicitly rejected the contention that the availability of the .defense in escape prosecutions be expressly conditioned upon the five elements set forth in *Lovercamp*. The court found that the absence of one or more of the elements listed in *Lovercamp* would not necessarily mandate a finding that the defendant could not assert a defense of necessity. In fact, the court held that these preconditions are merely matters which go to the weight and credibility of defendant's testimony.

■■ The *Unger* case is dispositive of this appeal. The testimony in the instant defendants' offers of proof was strikingly similar to that of the defendant in *Unger* and is clearly "some evidence" in support of the defense of necessity. As already noted, the trial court ruled as a matter of law that the defense of necessity was unavailable to defendants because, in its opinion, two of the elements of *Lovercamp* were not present. Since

our supreme court has ruled that the absence of one or more of these elements does not necessarily require the court to find that a defendant cannot assert this defense and that these conditions only go to the weight and credibility of defendant's testimony, it was error for the court to preclude the defendants from presenting their testimony. Defendants should have been allowed to put their evidence on the defense of necessity before the jury. They also should have had a necessity defense instruction presented to the jury. Consequently, we reverse the judgments of the trial court and remand this cause for a new trial.

■■ Since there will be a new trial in this cause, we address ourselves to defendants' second contention, that it was reversible error for the trial court to allow the State to present detailed testimony concerning defendants' apprehension in Utah. They argue that the inference of guilt of the crime charged which usually flows from evidence of flight and makes such evidence admissible does not exist under the circumstances of this case. They emphasize the fact that the Utah troopers were seeking to apprehend them only because they suspected their vehicle to be stolen and that therefore no suggestion arises that defendants knew they were being sought for the escape and were exhibiting a consciousness of their guilt of such charge by fleeing the troopers. They concede that the State could properly show that defendants had left Illinois since that fact allows an inference of guilt. (See *People v. Rossini*, 25 Ill. 2d 617, 185 N.E.2d 831; *People v. Henderson*, 39 Ill. App. 3d 502, 348 N.E.2d 854.) They also argue that the evidence presented concerning defendant Pelate's abduction of Robert Heinz was not probative of any issue in the instant case and was so prejudicial that the court's admission of it denied a fair trial to both defendants.

In response, the State argues that all the evidence, including that portion concerning the abduction, was properly admitted to prove that defendants possessed the general intent to escape from the penitentiary. The State also asserts that this evidence is admissible because it is evidence of flight tending to show their guilt of the escape offense.

■■ Flight in criminal law is defined as the evading of the course of justice by voluntarily withdrawing oneself in order to avoid arrest or detention, or the institution or continuance of criminal proceedings. It is a leaving or concealment under a consciousness of guilt and for the purpose of evading arrest. (*People v. Griffin*, 23 Ill. App. 3d 461, 318 N.E.2d 671.) Flight has been held to be indicated by a defendant's leaving the State and assuming a fictitious name. (*People v. Ortega*, 5 Ill. 2d 79, 125 N.E.2d 481; *People v. Henderson;* also see *People v. Haygood*, 60 Ill. App. 2d 70, 208 N.E.2d 373.) Both of these factors were present in the conduct of defendants as well as an attempt to elude police. Since the general rule is that evidence of flight is competent evidence which may be considered

by the jury along with all other facts tending to prove guilt (*People v. Pierce*, 26 Ill. App. 3d 550, 325 N.E.2d 758), it is incumbent upon the defendant to show why evidence of flight should not be considered as a circumstance tending to prove his guilt. Defendants argue, citing for authority *People v. Cox*, 74 Ill. App. 2d 342, 220 N.E.2d 7, and *People v. Harris*, 23 Ill. 2d 270, 178 N.E.2d 291, that the admission of the evidence of flight is error here because there is nothing in the record to suggest that they knew they were being sought for escape. We disagree. Direct proof that the accused had knowledge of his possible arrest is not necessary to render evidence of flight admissible, particularly when there is evidence in the case from which such fact may be inferred. (*People v. Griffin.*) Where the evidence shows, as it does here, that prison inmates have absented themselves from their institution of confinement, that fact alone warrants the inference that the escapees knew they were being sought for such escape.

■■ We agree with defendants that their flight from the troopers of the Utah Highway Patrol could indicate consciousness of guilt for the offense of car theft, but we do not believe that such inference renders that evidence irrelevant with respect to the crime of escape. The evidence that they were in Utah is probative also of their intention to escape. Accordingly, we find no error in the admission of the evidence of the high speed chase and capture of defendants. We do suggest, however, that the prosecution could accomplish its purpose by presenting more general testimony concerning the facts that defendants were apprehended in Utah 18 days after the escape, that they did not willingly submit themselves to custody and that they gave fictitious names.

■■ We agree with defendants that the trial court erred in allowing the State to present the specifics of defendant Pelate's abduction of Robert Heinz. The admission of this evidence was an abuse of discretion, and such evidence should not be admitted upon retrial.

■■ Generally, evidence of crimes other than one for which an accused is being tried is not admissible unless the evidence tends to prove a fact in issue or goes towards showing motive, intent, identity, absence of mistake or *modus operandi.* (*People v. McDonald*, 62 Ill. 2d 448, 343 N.E.2d 489.) Although Pelate's conduct in abducting another does tend to prove that he intended to escape and is connected with the evidence of flight, we do not believe that the evidence was automatically admissible. It is not sufficient that the judge determine that evidence of another crime comes within one of the exceptions to the general rule of inadmissibility, rather the actual need for the evidence must be considered in light of the relevant issues and the other evidence available to the prosecution and must be balanced against the prejudicial effect its admission will have upon the jury. (*People v. Butler*, 31 Ill. App. 3d 78, 334 N.E.2d 448;

McCormick, Evidence §190, at 453-54, (2d ed. 1972).) After considering the evidence in this case, we believe the trial court abused its discretion in admitting this evidence. Sufficient evidence was available to the State, as revealed by the proof it presented, to establish the general intent of defendants to escape which was furthered by their flight. The prejudice created by putting before the jury evidence of the heinous crime of kidnapping, accomplished by threats of gunfire, is substantial. In this instance, the prejudice outweighed probative value and the court should have sustained defendants' objections to the admission of this evidence. *People v. Butler.*

For the reasons stated, the judgments of the circuit court of Johnson County finding defendants guilty of escape are reversed and this cause is remanded for a new trial consistent with this opinion.

Reversed and remanded.

G. MORAN and KARNS, JJ., concur.