THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DONALD TACKETT, Defendant-Appellant.

Fourth District   No. 4—87—0627

Opinion filed May 5, 1988.

Daniel D. Yuhas and Allen H. Andrews, both of State Appellate Defender's Office, of Springfield, for appellant.

Donald D. Bernardi, State's Attorney, of Pontiac (Kenneth R. Boyle, Robert J. Biderman, and J. A. C. Knuppel, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McCULLOUGH delivered the opinion of the court:

The defendant, Donald Tackett, an inmate at the Pontiac Correctional Center, was indicted for unlawful use of a weapon by a felon (Ill. Rev. Stat. 1985, ch. 38, par. 24—1.1). Following jury trial, the defendant was convicted of the charge and was subsequently sentenced to a six-year term of imprisonment to be served consecutive to his prior sentence. From this conviction and sentence, the defendant appeals.

The defendant raises three issues for our consideration: (1) whether the court erred in refusing to instruct the jury on the affirmative defense of necessity; (2) whether the defendant was denied the effective assistance of counsel; and (3) whether the court properly considered the defendant's prior felony convictions in sentencing.

We affirm the defendant's conviction and sentence.

On December 4, 1986, the defendant was indicted on a charge of unlawful use of a weapon by a felon (Ill. Rev. Stat. 1985, ch. 38, par. 24—1.1). The offense allegedly occurred on September 9, 1986, when the defendant, who was incarcerated at the Pontiac Correctional Center, was found in possession of a shank. On March 9, 1987, the defendant filed a motion for change of venue which was subsequently granted.

Prior to trial, the State filed a motion *in limine* to prevent the defendant from raising the affirmative defense of necessity. The court denied the motion, specifically noting that "raising the necessity defense is one in which there is a certain threshold of evidence that the defendant is required to raise before the issue can go to the jury." Consequently, the court indicated it would determine whether or not to instruct the jury on the necessity defense at the close of the evidence.

At trial, the State presented the testimony of four correctional officers who were directly involved in the incident. Charles Hurt stated that he was working at the cell house tower on the evening of September 9, 1986. Hurt explained that he could see into the cells from the tower. At approximately 8 p.m. he observed an inmate in cell 321 displaying a small homemade shank. Hurt immediately contacted his

shift commander, who indicated he would investigate. Hurt then witnessed a black inmate exit cell 321 and the defendant enter the cell.

According to Hurt, the defendant remained in the cell for a brief time and then left. As the defendant proceeded down the gallery, he was met by correctional officers William Cox, Larry Crosiar, and John Finney. The officers stopped the defendant and patted him down. They removed a shank from the defendant's waistband. The defendant was then handcuffed and taken to his cell, where he was placed under deadlock. Officers Cox and Crosiar both testified that the defendant was an inmate of the Pontiac Correctional Center when the shank was recovered.

The correctional officers all testified to the general safety conditions at Pontiac. They indicated that guards were unarmed when working among the inmates, but that it was not uncommon for inmates to possess dangerous weapons. They described how inmates made weapons and the problems resulting therefrom. The State additionally presented Officer Theodore Staley, who described the procedure for recording and storing confiscated weapons. Staley indicated he signed a receipt for the weapon recovered from the defendant. Finally, the State introduced a certified copy of the defendant's previous convictions for murder, armed robbery, and home invasion.

The defense called William Duncan, an inmate, who stated he was a friend of the defendant. Shortly after Duncan met the defendant in May of 1985, he saw the defendant with bruises on his face. The defendant informed Duncan he had been beaten by the gangs. Duncan further explained that whites constitute an extreme minority at Pontiac, and as a result, most whites pay the gangs to insure their physical safety. These payments, however, do not insure complete safety. According to Duncan, protective custody is not a safe alternative and provides no protection from the gangs. On cross-examination, however, he admitted that he has never seen anyone injured while in protective custody and has never reported any gang-related extortion or violence to the prison administration.

David Olbrott, another inmate, also testified that white inmates are forced to pay the gangs for physical protection. Olbrott further claimed that the administration at Pontiac cooperated with the gangs.

The defendant testified, admitting possession of the shank on September 9, 1986. He stated that he had been threatened on more than one occasion, had been beaten twice, and carried the knife for self-protection. The defendant had previously made a vest from magazines for protection, but the prison authorities had confiscated the vest. The defendant admitted he did not report the gang problems, but claimed

prison authorities did nothing to remedy the situation.

The defendant indicated he earned $17.50 per month as a barber student, and paid $10 per month to a particular gang for protection. The defendant voluntarily chose not to live in protective custody because he believed he could not earn money or continue his education if in protective custody. The defendant further claimed protective custody was infiltrated by violent gang members.

On cross-examination, the defendant admitted to wearing gang colors in prison. He claimed, however, this was merely to indicate which gang he was protected by. The defendant refused to say who had beaten him, stating his life would be in danger if he revealed their identity.

In rebuttal, the State presented correctional officer Crosiar, who testified that inmates in protective custody can continue their education, attend entertainment functions, and go to the yard, the cafeteria and the showers. According to Crosiar, the defendant made no statements when the shank was recovered from him. The defendant did not request to be placed in protective custody and made no indication whatsoever that he feared for his personal safety. Additionally, John Finney, a correctional officer, testified the defendant was in a gang as signified by the wearing of gang colors.

At the conclusion of the evidence, the court ruled that it would not instruct the jury on the defendant's alleged necessity defense. The jury returned a verdict of guilty. On August 31, 1987, the cause was called for sentencing, at which time the defendant objected to consideration of his prior convictions as an aggravating factor. The defendant maintained that his previous convictions had enhanced the unlawful use of weapon to a felony and could not also be considered as an aggravating factor in sentencing. The court, however, stated that it could consider the defendant's prior criminal history and that there was no problem of double enhancement. The court then sentenced the defendant to a six-year term of imprisonment to be served consecutive to his current sentence.

At the close of evidence, the defendant's request for instructions on the defense of necessity was denied. Citing the cases of *People v. Unger* (1977), 66 Ill. 2d 333, 362 N.E.2d 319, and *People v. Roberts* (1985), 136 Ill. App. 3d 863, 483 N.E.2d 1328, the court found: (1) the defendant failed to produce evidence of an immediate and specific threat of death, forcible sexual attack, or substantial bodily harm in the immediate future; (2) the defendant failed to report any past violence to the prison authorities or request placement in protective custody; (3) the defendant made no attempts to resort to the court sys-

tem; and (4) the defendant's conduct of carrying a shank while in prison was not the sole alternative available under the circumstances of this case. Consequently, the court found there was insufficient evidence in support of a necessity defense.

▇ Necessity is an affirmative defense with statutory requirements: (1) that the person claiming the defense was without blame in occasioning or developing the situation; and (2) that this person reasonably believed that his conduct was necessary to avoid a greater public or private injury than that which might reasonably have resulted from his conduct. (Ill. Rev. Stat. 1985, ch. 38, par. 7—13.) In order to properly raise necessity, the defendant must present "some evidence" in support of the claim. (*People v. Unger* (1977), 66 Ill. 2d 333, 362 N.E.2d 319; *People v. Bivens* (1987), 156 Ill. App. 3d 222, 509 N.E.2d 640.) Once some evidence in support of the defense has been presented, the State has the burden to disprove the applicability of the defense beyond a reasonable doubt. *People v. Perez* (1981), 97 Ill. App. 3d 278, 422 N.E.2d 945.

▇ In *Unger*, the Illinois Supreme Court discussed factors which are relevant in assessing a claim of necessity to charges of escape from prison. Although an escape charge necessarily involves different considerations from charges of unlawful possession, three of the factors discussed in *Unger* are especially pertinent here. Those factors include: (1) the prisoner is faced with a specific threat of death, forcible sexual attack or substantial bodily injury in the immediate future; (2) there is no time for a complaint to the authority or there exists a history of futile complaints which make any result from such complaint illusory; and (3) there is no time or opportunity to resort to the courts. (*Unger*, 66 Ill. 2d at 344, 362 N.E.2d at 323, quoting *People v. Lovercamp* (1974), 43 Cal. App. 3d 823, 831-32, 118 Cal. Rptr. 110, 115.) These factors are not to act as an exclusive determination, but rather go to the weight and credibility of the evidence presented in support of an affirmative defense of necessity. *Unger*, 66 Ill. 2d 333, 362 N.E.2d 319.

▇ The record before us fails to present sufficient evidence in support of the necessity defense. The defendant freely admitted possession of the shank, claiming it was necessary for self-protection. The defendant did not, however, testify to or present any evidence regarding a specific threat. Although the defendant had suffered from gang violence in the past, there was no evidence of any imminent danger. In fact, the defendant testified that he had possessed the weapon for over one year and carried it only when he felt it was necessary. The defendant further indicated that he lives in a one-man cell

and has never been seriously injured. In this respect, the defendant's claim of necessity is unsupported. (See *Unger*, 66 Ill. 2d 333, 362 N.E.2d 319; *Bivens*, 156 Ill. App. 3d 222, 509 N.E.2d 640.) The evils alleged by the defendant at trial were neither grave nor serious. The fact that the prison, and specifically the gangs, often present a dangerous situation does not justify the arming of inmates and is clearly insufficient to support a claim of necessity.

The defendant additionally failed to produce evidence to show he chose the least harmful alternative. The defendant never reported any violence to the prison authorities. He never requested placement in protective custody. The defendant did not present evidence of futile complaints or lack of access to the courts. The defendant chose to arm himself, completely disregarding all legal alternatives. (See *People v. Roberts* (1985), 136 Ill. App. 3d 863, 483 N.E.2d 1328; *People v. White* (1979), 78 Ill. App. 3d 979, 397 N.E.2d 1246.) In viewing the entire record, the trial court properly determined that necessity was unavailable as a defense.

In *People v. Ryan* (1987), 117 Ill. 2d 28, 509 N.E.2d 1001, *cert. denied sub nom. Lee v. Illinois* (1987), ____ U.S. ____, 98 L. Ed. 2d 258, 108 S. Ct. 298, the Illinois Supreme Court noted that there is no requirement of unlawful intent where an imprisoned felon is charged with possession of a dangerous weapon. The State asserts that this absence of an intent requirement necessarily obviates the availability of the necessity defense.

In further support of this argument, the State cites to the 1987 amendment to the unlawful possession statute which creates one specific affirmative defense. (Pub. Act 85—736, eff. Sept. 22, 1987.) The State maintains this amendment necessarily implies that no other affirmative defenses are available. We, however, see no need to address this argument. The defendant here was charged under the 1985 statute (Ill. Rev. Stat. 1985, ch. 38, par. 24—1.1). Case law at the time clearly indicates the availability of the affirmative defense of necessity.

 The defendant next claims ineffective assistance of counsel based upon a deficient closing argument. The defendant cites *People v. Hattery* (1985), 109 Ill. 2d 449, 488 N.E.2d 513, *cert. denied* (1986), 478 U.S. 1038, 92 L. Ed. 2d 727, 106 S. Ct. 3314, in support of the proposition that failure to advance the defendant's innocence in closing argument constitutes reversible error. In *Hattery*, however, the defense counsel admitted the defendant's guilt in opening statement, failed to advance any theory of defense, and attempted to establish on cross-examination the defendant was compelled to kill the victims, all

in an effort to avoid the death penalty. (*Hattery*, 109 Ill. 2d 449, 488 N.E.2d 513.) Such is not the case here.

In *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052, the Supreme Court established the requisites for a claim of ineffective assistance of counsel. To prevail, a defendant must show: (1) counsel's representation fell below an objective standard of reasonableness; and (2) that deficiency prejudiced the defendant thereby depriving him of a fair trial, and but for such deficiencies, the result of the proceedings would have been different. (*Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064.) The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." (*Strickland*, 466 U.S. at 686, 80 L. Ed. 2d at 692-93, 104 S. Ct. at 2064.) Moreover, when evaluating ineffectiveness claims, courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689, 80 L. Ed. 2d at 694, 104 S. Ct. at 2065.

In *United States v. Cronic* (1984), 466 U.S. 648, 80 L. Ed. 2d 657, 104 S. Ct. 2039, the companion case to *Strickland*, the Court stressed the need for counsel to act as a true advocate of the accused. The Court concluded, "[t]he right to the effective assistance of counsel is thus the right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing." (*Cronic*, 466 U.S. at 656, 80 L. Ed. 2d at 666, 104 S. Ct. at 2045.) This constitutional guarantee is violated when the process loses its character as a confrontation between adversaries. *Cronic*, 466 U.S. 648, 80 L. Ed. 2d 657, 104 S. Ct. 2039.

■ It cannot be said, based upon the record presented before us, that defense counsel failed to act as an advocate. Counsel presented much evidence in the defendant's behalf, conducting meaningful cross-examination, and forcefully argued the necessity defense at the instructions conference. Additionally, defendant fails to show that the outcome of the case would have been different but for counsel's alleged deficiencies. The State clearly proved the defendant was a convicted felon, was in possession of a weapon, and was confined in a penal institution at the time of the incident. The defendant's claim of ineffective assistance of counsel is unsupported.

■ The defendant's final argument on appeal involves the sentence imposed. At the sentencing hearing, defense counsel objected to consideration of defendant's prior offenses as an aggravating factor. Counsel argued that the use of the prior convictions as an aggravat-

ing factor constituted double enhancement because the prior convictions were an element of the offense of unlawful use of a weapon by a felon. The court, however, found no double enhancement and went on to consider the defendant's prior history of criminality as an aggravating factor.

The defendant was convicted of unlawful use of weapons by a felon. (Ill. Rev. Stat. 1985, ch. 38, par. 24—1.1.) Pursuant to the statute, the defendant's conviction constituted a Class 3 felony based upon his prior felony conviction. (Ill. Rev. Stat. 1985, ch. 38, par. 24—1.1(b).) The offense is a Class 1 felony when the defendant possesses a weapon "while confined in a penal institution." (Ill. Rev. Stat. 1985, ch. 38, par. 24—1.1(b).) Finally, the Unified Code of Corrections required that the defendant's sentence be consecutive because the offense was committed while incarcerated. Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—4(f).

The defendant cites to *People v. Hobbs* (1981), 86 Ill. 2d 242, 427 N.E.2d 558, in support of his double enhancement argument. In *Hobbs*, the defendant's 1978 felony conviction was used to enhance the misdemeanor charge then pending against him (theft under $150) to a felony. (Ill. Rev. Stat. 1985, ch. 38, par. 16—1(e).) The prior and current felony convictions were then considered together by the court as the basis for imposing an extended-term sentence. In reversing the sentence, the supreme court emphasized that the dual use of the defendant's prior conviction, initially to create the second felony and then to extend the term based upon that second felony was improper. *Hobbs*, 86 Ill. 2d at 246, 427 N.E.2d at 560.

The situation here is distinguishable. The defendant here was convicted of three prior felonies. At trial, the State introduced a certified statement of conviction for all three convictions (murder, armed robbery, home invasion). The introduction of such evidence was necessary as a conviction of a felony is an element of the offense of unlawful use of weapons by a felon. (Ill. Rev. Stat. 1985, ch. 38, par. 24—1.1.) Since the prior felony was an inherent element of the offense, it cannot be said that it was used for purposes of enhancement. Enhancement occurs where a prior offense is used to increase a penalty, not to create an offense. Thus, the double enhancement concept is inapplicable here.

■ At sentencing, the court made reference to the defendant's past history of criminality as an aggravating factor. The court specifically mentioned the defendant's convictions for murder, armed robbery, and home invasion. It is not clear from the record which felony was initially used as the predicate offense for the conviction of unlaw-

ful use of weapons by a felon. Consideration of the predicate offense as an aggravating factor would constitute error. We, however, find this error to be harmless. Not all errors in sentencing require remandment. (*People v. Bourke* (1983), 96 Ill. 2d 327, 449 N.E.2d 1338.) Where it can be determined from the record that the weight placed on an improperly considered factor was insignificant and did not result in a greater sentence, any error will be deemed harmless. (*Bourke*, 96 Ill. 2d 327, 449 N.E.2d 1338.) In light of the sentence the defendant received here, it cannot be said that any error that occurred during sentencing prejudiced the defendant.

Based on the foregoing, the conviction and sentence of the defendant are affirmed.

Affirmed.

KNECHT and SPITZ, JJ., concur.