THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. FRANCIS SCOTT, Defendant-Appellant.

First District (2nd Division)   No. 1—86—3283

Opinion filed February 13, 1990.

Randolph N. Stone, Public Defender, of Chicago (Millicent Willis and Z. Peter Tokatlian, Assistant Public Defenders, of counsel), for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Inge Fryklund, Marie Quinlivan Czech, and Diann L. Doppelt, Assistant State's Attorneys, of counsel), for the People.

JUSTICE HARTMAN delivered the opinion of the court:*

A jury found defendant Francis Scott guilty of escape, and he was sentenced to an extended term of 12 years in custody of the Illinois Department of Corrections. Defendant appeals and raises as issues whether (1) the circuit court improperly precluded him from raising the affirmative defense of necessity; (2) the introduction of and reference to evidence of other crimes denied him a fair trial; (3) certain · prosecutorial comments made during closing argument were improper; (4) he was denied effective assistance of counsel; and, alternatively, (5) his sentence was improper.

In June of 1980, defendant was charged by information with escape from Cook County jail while being held on a fugitive warrant from Florida. (Ill. Rev. Stat. 1977, ch. 38, par. 31—6(a).) A mistrial was declared in the first trial after the jury was unable to reach a verdict. The second trial, at issue in this appeal, was commenced in September of 1980.

Prior to trial, the assistant public defender advised the circuit court that defendant no longer wished to retain his services. The court noted defendant's desire to proceed *pro se*; nevertheless, it

---

*This appeal was dismissed for want of prosecution in 1987; it was reinstated in 1988 on appellant's motion.

asked the public defender to "stand by" as advisory counsel if needed by defendant.

At trial, Clarence English, a warden at Cook County jail, testified defendant was an inmate at the facility on June 4, 1978. That evening, English was told by another inmate that defendant "went over the wall" and escaped earlier that afternoon, confirmed by a subsequent search and head count of the prisoners. On the opposite side of the jail wall, English observed defendant's cap resting on the ground. He then reported defendant missing.

According to English, a jail history card indicated defendant was being held in the jail on a fugitive warrant from Florida. He also averred "Francis Scott" and "Terry Hannen" [sic] were one and the same individual.

Dennis Kemble, an FBI agent, testified that on June 5, 1978, he learned defendant, also known to him as "Terry Hannah," was seen on a Chicago street after the report of his escape from prison and was staying at an address on North Central Avenue. Upon arriving there, Kemble was told defendant was attending a movie with his daughter. Kemble and his partner later observed defendant at the Central Avenue address, identified themselves, and advised him he was under arrest. Defendant attempted to evade the agents, resisted their efforts to handcuff him, and unsuccessfully tried to grab Kemble's holstered revolver in the ensuing struggle before being subdued.

Norman Russell, deputy chief investigator with the Cook County Department of Corrections (Department), averred he was assigned on June 6, 1978, to pick up defendant from Chicago police custody. After advising defendant of his *Miranda* rights, Russell questioned him about the escape. Defendant agreed to make a statement and told Russell that a number of correctional officers at the jail were involved; a large sum of money was passed; a prearranged signal was given to a tower guard that "all was clear" so he could be "boosted" over the wall by two other inmates; and a car was to be waiting for him on the outside when he escaped. Defendant claimed an inmate named Sam Lawrence had approached him with a plan to kill a witness in another case, and selected defendant as the best person for the task because of his prior record for escape. Defendant told Russell he had no intention of killing anyone, however, because that "was not his bag." On cross-examination, Russell acknowledged that defendant refused to sign a typed transcript of this statement.

Elmer Fox, Chicago police extradition officer, testified that when defendant was arrested in January of 1978, he was wanted in three States under various aliases. Because multiple warrants were in-

volved, if defendant posted bond on one, Fox would have rearrested defendant for the second State, and so forth. According to Fox, defendant was lawfully being held in jail on the day of the escape pursuant to a Florida fugitive warrant signed April 16, 1978.

John Glenville, an assistant State's Attorney in charge of extradition matters, stated that on June 4, 1978, the date of the escape, an extradition proceeding was pending to return defendant to Florida. During the pendency of this proceeding, defendant was being housed in Cook County jail.

Defense strategy at trial was to challenge the State's evidence that defendant was in lawful custody at the time of the escape. Rebecca Harris, a records officer with the Department, admitted that a jail history card for "Terry Hannah" contained a notation indicating that the Florida "hold" was removed, pursuant to instructions from Elmer Fox. The removal of the Florida hold left charges from Ohio and Illinois pending against defendant; he posted bond on those charges and left the jail on March 17, 1978. On cross-examination, however, Harris testified that a second jail history card under the name of "Francis Scott" reflected a fugitive warrant dated April 17, 1978, lodged against defendant.

As noted, the jury found defendant guilty of escape, and he subsequently was sentenced to an extended term of 12 years' imprisonment. Defendant appeals.

I

Defendant initially contends it was error for the circuit court to preclude his introduction of evidence concerning the affirmative defense of necessity. The State had filed a pretrial motion *in limine* to preclude defendant from introducing any evidence of the conditions existing at Cook County jail prior to his escape. The motion acknowledged testimony offered by defendant in his first trial relating to an affirmative defense of duress or necessity; the State nevertheless asserted that since defendant presented no evidence at that time of a *bona fide* effort to surrender or return to custody after the claimed duress or necessity had lost its coercive force, he was not entitled to claim those defenses on retrial. The circuit court subsequently granted the State's motion *in limine*.

Defendant then presented a supplemental answer to the State's discovery which attempted to raise an affirmative defense of self-defense. In an offer of proof, defendant claimed that just seconds before his escape from Cook County jail, he was confronted by several prisoners who were attacking him with knives. He maintained that there

were two witnesses to the incident, one an eyewitness. The public defender subsequently asked, by way of clarification, whether defendant would be allowed to introduce evidence that he was under a threat of death at the time he escaped; the court ruled that such a defense was "inconsistent with the charges involved" and "without relevancy" to the matter, and denied defendant the right to present such evidence. On appeal, defendant asserts that by granting the State's motion *in limine*, the circuit court abused its discretion and violated his constitutional right to present a defense.

■ Necessity is a statutorily recognized affirmative defense. (Ill. Rev. Stat. 1977, ch. 38, par. 7—13.) A claim of necessity may be an appropriate defense to a charge of escape. (See *People v. Unger* (1977), 66 Ill. 2d 333, 362 N.E.2d 319 (*Unger*).) In order to properly raise a defense of necessity, defendant must present "some evidence" to support his claim (*Unger*, 66 Ill. 2d 333, 362 N.E.2d 319; *People v. Tackett* (1988), 169 Ill. App. 3d 397, 402, 523 N.E.2d 647). Once presented, the State has the burden to prove the nonexistence of necessity beyond a reasonable doubt. *People v. Tackett*, 169 Ill. App. 3d at 402.

■ Relevant preconditions in establishing a claim of necessity to a charge of escape include the following (*Unger*, 66 Ill. 2d at 341-42, quoting *People v. Lovercamp* (1974), 43 Cal. App. 3d 823, 831-32, 118 Cal. Rptr. 110, 115):

" '(1) The prisoner is faced with a specific threat of death, forcible sexual attack or substantial bodily injury in the immediate future;

(2) There is no time for a complaint to the authorities or there exists a history of futile complaints which make any result from such complaints illusory;

(3) There is no time or opportunity to resort to the courts;

(4) There is no evidence of force or violence used towards prison personnel or other "innocent" persons in the escape; and

(5) The prisoner immediately reports to the proper authorities when he has attained a position of safety from the immediate threat.' "

According to the *Unger* court, these factors only went to the weight and credibility of the evidence presented in support of an affirmative defense of necessity; the absence of one or more of these conditions would not automatically preclude a claim of necessity. *Unger*, 66 Ill. 2d at 342-43; *People v. Pelate* (1977), 49 Ill. App. 3d 11, 17, 363 N.E.2d 860.

In the instant case, the State's motion *in limine* was based upon the absence of the fifth factor enumerated above; specifically, the State asserted that defendant offered no evidence of his immediate attempt to return or surrender to authorities as soon as the claimed necessity had lost its coercive force. In *United States v. Bailey* (1980), 444 U.S. 394, 410-11, 62 L. Ed. 2d 575, 591, 100 S. Ct. 624, 635 (*Bailey*), relied upon by the State, the court held that, in the context of a prison escape, an escapee would not be entitled to claim a defense of necessity "unless and until he demonstrates that, given the imminence of the threat," violation of the escape statute was "his only reasonable alternative." Further, in order to assert necessity as a defense to the crime charged, the escapee was required to "first offer evidence justifying his continued absence from custody as well as his initial departure." (444 U.S. at 412, 62 L. Ed. 2d at 592, 100 S. Ct. at 635.) *Bailey* held that testimony of a *"bona fide* effort to surrender or return to custody as soon as the claimed \*\*\* necessity had lost its coercive force" was an *"indispensable element* of such an offer." (Emphasis added.) 444 U.S. at 412-13, 62 L. Ed. 2d at 592, 100 S. Ct. at 635-36.

In the case at bar, the circuit court relied on *Bailey* in granting the State's motion *in limine*, which defendant suggests was improper. He argues *Bailey* only involved the propriety of a jury instruction after the close of all the evidence, and at most provided an additional factor for assessing the weight and credibility of the asserted necessity defense. Defendant's reading of *Bailey* is flawed; the court clearly held that evidence of a *bona fide* effort to return or surrender once the claimed necessity lost its coercive force was an indispensable element of the defense, and expressly stated it was *not* just another factor in assessing the weight and credibility of the asserted defense. 444 U.S. at 412, 62 L. Ed. 2d at 592, 100 S. Ct. at 635-36.

Defendant's reliance upon *Unger* therefore is misplaced. *Bailey* modifies *Unger* by requiring some evidence of a *bona fide* effort to surrender or return to custody once the coercive pressures have abated; contrary to *Unger*, the absence of this particular precondition conclusively precludes a claim of necessity. No decisions in Illinois, including the cases cited by defendant, have considered the effect of *Bailey* on the *Unger* decision: *People v. Pelate* (1977), 49 Ill. App. 3d 11, 363 N.E.2d 860, was decided before *Bailey* and relied exclusively upon *Unger*; *People v. Bivens* (1987), 156 Ill. App. 3d 222, 509 N.E.2d 640, and *People v. Tackett* (1988), 169 Ill. App. 3d 397, 523 N.E.2d 647, decided after *Bailey*, both rejected asserted claims of necessity due to each defendant's failure to present sufficient evidence to sup-

port such a defense, and did not address *Bailey* or the issue of a *bona fide* effort to return.

Moreover, *Bailey* is not limited to a determination, at the close of all the evidence, of the propriety of a jury instruction for necessity. James Cogdell, one of four defendants in *Bailey*, was tried two months after the other three escapees were convicted. In the earlier trial, the defense was allowed to present testimony of allegedly inhumane jail conditions, but was denied a jury instruction on necessity; in contrast, Cogdell was precluded at the outset of his defense case from presenting *any* evidence of jail conditions absent initial testimony regarding his efforts to turn himself in after his escape from the allegedly coercive situation. Cogdell's conviction for escape, along with those of the other three defendants, nevertheless was upheld.

■ In light of defendant's failure to present any evidence of a *bona fide* effort to surrender or return to custody once the claimed necessity was removed, the court did not abuse its discretion in granting the State's motion *in limine*. See *People v. Williams* (1978), 60 Ill. App. 3d 529, 532, 377 N.E.2d 367.

■ Defendant's added contention, that the court's ruling denied him *ab initio* the opportunity to present "some evidence" of his claim of necessity, also must be rejected. Courts have allowed defendants to make offers of proof to demonstrate the existence of "some evidence" in support of a necessity claim (see *People v. White* (1979), 78 Ill. App. 3d 979, 397 N.E.2d 1246; *People v. Pelate*, 49 Ill. App. 3d 11, 363 N.E.2d 860); here, defendant failed to do so. Defendant did make an offer of proof as to the existence of a threat of death or substantial bodily injury; he failed to present, however, any offer of proof of his *bona fide* effort to return, an element of necessity found "indispensable" in *Bailey*.

Contrary to his assertion, the circuit court expressly indicated that, pursuant to *Bailey*, it would allow defendant to present evidence of his *bona fide* effort to return, stating:

> "[Y]ou are pretty restricted and limited unless you have some form to show that you have taken some kind of affirmative action to surrender yourself or to take necessary actions to make yourself available to the proper authorities and you indicated the only reason why you conducted yourself as you had is that because of these conditions that existed but that you are surrendering to the authorities. Then you have a different situation. That is something else that you can consider. *And I certainly would not preclude you from doing that if, in fact, you can do that.*" (Emphasis added.)

It cannot be said that the circuit court improperly precluded defendant from asserting a defense of necessity.

## II

■ Defendant next insists he was denied a fair trial by the State's introduction of physical evidence identifying him as a fugitive and its repeated allusions to his involvement in other crimes. Initially, defendant's entire argument here may be deemed waived, as he failed to file a written post-trial motion in this case. (*People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124.) Further, of the many errors identified by defendant, he failed to object contemporaneously to all but two.

Assuming, *arguendo*, the issues were properly preserved, defendant cites 13 references to his involvement in other crimes or fugitive warrants within the testimony of the State's witnesses, and asserts that the sole purpose of such evidence was to prejudice the jury into believing he was an incorrigible criminal. Evidence of other crimes for which the accused is not on trial is inadmissible to show his character or propensity to commit crime; however, such evidence is admissible if relevant for any other purpose. (*People v. Kimbrough* (1985), 138 Ill. App. 3d 481, 485 N.E.2d 1292; *People v. Anderson* (1982), 108 Ill. App. 3d 563, 569, 439 N.E.2d 65.) The admission of such evidence is within the sound discretion of the circuit court, and its determination will not be disturbed on review absent a clear abuse of that discretion. *People v. Anderson*, 108 Ill. App. 3d at 570.

■ In the instant case, the State was required to prove that defendant was charged with the commission of a felony in a fugitive warrant from Florida, which rendered his custody lawful on the date of the escape; further, it was compelled by the defense strategy to explain to the jury the procedures involved in ascertaining defendant's status as a fugitive. Unlike *People v. Pittman* (1984), 126 Ill. App. 3d 586, 467 N.E.2d 918, cited by defendant, the evidence of other crimes and fugitive warrants here was necessary to establish that defendant actually committed the crime charged, which constitutes an appropriate use thereof. See *People v. Kimbrough*, 138 Ill. App. 3d 481, 485 N.E.2d 1292.

■ Even if introduction of the evidence of other crimes was error, reversal is not required where, as here, the evidence of defendant's guilt is demonstrated beyond a reasonable doubt. (*People v. Pittman*, 126 Ill. App. 3d at 590.) The trial evidence revealed a valid fugitive warrant under which defendant lawfully was in custody, unrebutted testimony that defendant escaped and later resisted recapture,

an unrepudiated confession, and an unimpeached description of the escape plan as told to a prison official by defendant. Any error through the admission of other crimes evidence was harmless. See *People v. Pittman*, 126 Ill. App. 3d 586, 467 N.E.2d 918.

Defendant's claim that the State's references to his several aliases unfairly prejudiced the jury likewise is unfounded. The various fugitive warrants at issue identified defendant by at least one of three aliases, making it necessary to specify whether the name on each document in fact referred to defendant. Further, the two inmate identification cards resolved the question of whether defendant was lawfully released from custody: the "Terry Hannah" card indicated defendant posted bond and could be released; the "Francis Scott" card indicated an outstanding warrant precluding his release. Since defendant's use of an alias was material to the case against him, that evidence was admissible. See *People v. Bryan* (1987), 159 Ill. App. 3d 46, 53, 511 N.E.2d 1289.

Defendant next protests he was prejudiced by FBI agent Dennis Kemble's "insinuation" of prior dealings with defendant resulting from his work as a law enforcement officer. Kemble testified he knew "Francis Scott" as "Terry Hannah"; defendant had been incarcerated at Cook County jail; and "having had previous contact with Mr. Scott, I went over to a location where I believe that he would have gone to." *People v. Richardson* (1977), 48 Ill. App. 3d 307, 362 N.E.2d 1104, relied on by defendant as support for this point, is inapposite. The challenged portions of Kemble's testimony fall well short of the comments found prejudicial in *Richardson*: his familiarity with defendant by an alias and because of a "previous contact" does not necessarily constitute evidence of other crimes, and any such conclusion would be mere speculation (see *People v. Allen* (1981), 96 Ill. App. 3d 871, 879, 422 N.E.2d 100); Kemble never mentioned the nature of the other crimes themselves; and defendant's incarceration at Cook County jail was an essential element of the offense for which he was being tried. No unfair prejudice resulted from Kemble's testimony.

Defendant complains that the most prejudicial error was the introduction of physical evidence detailing his other offenses. Specifically, defendant urges that People's exhibit number 1, a "prison history card" with a notation in red indicating "escape from federal custody," and People's exhibit number 5, the supporting documentation for the return of defendant from Illinois to Florida to face certain other charges which were listed therein, were improperly admitted over his objection.

Irrelevant material contained in an otherwise competent document must be deleted before the document is presented for jury consideration, unless to do so would severely impair its evidentiary value. (*People v. Donaldson* (1956), 8 Ill. 2d 510, 517-18, 134 N.E.2d 776.) Before People's exhibit number 5 was sent to the jury, the document was amended and various pages were removed; the court expressly stated, with reference to the remaining portions, that there was "no possible way those charges can be deleted" without changing the entire document, and were necessary to inform the jury of the outstanding Florida charges on which the fugitive warrant was based. In light of this observation by the court and absence of the document in question in the record on appeal, we cannot say that admission of this evidence was error.

As to People's exhibit number 1, the court simply stated that it examined the notation on the card and that it "did not in any way present a problem for submission to the jury." The exhibit has not been made part of the record on appeal. The exhibit (the "Terry Hannah" prison history card) clearly was critical to the State's case and of great probative value. Admission of this physical evidence was not error.

As the foregoing discussion indicates, most, if not all, of the evidence in this case with reference to other crimes was relevant to the crime for which he was being tried, and therefore offered for a proper purpose. Unlike *People v. Olson* (1981), 96 Ill. App. 3d 193, 420 N.E.2d 1161, cited by defendant, this case does not involve too much evidence of an issue "only peripheral" to the offense being tried; lawful custody of a person charged with or convicted of a felony is an essential element of "escape." (See Ill. Rev. Stat. 1977, ch. 38, par. 31—6(a).) In addition, the evidence of defendant's guilt was overwhelming, and any error would be harmless.

### III

Defendant next asserts as error that improper questioning at trial and comments in closing argument by the prosecution denied him a fair trial. Initially, we note this issue also may be deemed waived for defendant's failure to file a written post-trial motion. (*People v. Enoch*, 122 Ill. 2d 176, 522 N.E.2d 1124.) Assuming, *arguendo*, the question is properly before this court, defendant complains the prosecution improperly elicited testimony from State witnesses concerning his participation in other criminal activity in order to "taint" his case "in the eyes of the jurors." This argument was disposed of in the preceding section.

■ Defendant continues that several comments in the prosecutor's closing argument were prejudicial. He urges the statement that defendant was "no boy scout" improperly implied to the jury that he was a dangerous man who should be convicted. The record reflects that the defense immediately objected to this remark, prompting the court to admonish the jury that defendant's character was not an issue and argument should not be considered if not based on evidence adduced at trial. As such, any error was cured. See *People v. Perez* (1983), 113 Ill. App. 3d 143, 149, 446 N.E.2d 1229.

■ Defendant also challenges the State's repeated comments concerning charges of escape against him from other jurisdictions, as well as a remark in rebuttal that the prosecutor "personally believe[d] there was absolutely nothing wrong with" Elmer Fox's actions as extradition officer. These comments, the latter of which inappropriately interjected the prosecutor's personal belief, exceeded any legitimate purpose and were improper, as was his remark that he was "incensed" by the theory of the defense. To merit reversal, however, a prosecutor's improper comments must be of "substantial magnitude" when viewed in the context of the entire record and argument. *(People v. Cukojevic* (1981), 103 Ill. App. 3d 711, 723, 431 N.E.2d 1154.) Reversal is not warranted unless the improper remarks resulted in substantial prejudice to the defendant; if the improper comments did not constitute a material factor in the conviction of defendant, the verdict will not be disturbed. *People v. Cukojevic*, 103 Ill. App. 3d at 723.

■ In light of the overwhelming evidence of defendant's guilt in this case, the foregoing improper remarks cannot be said to have constituted a material factor in his conviction; their absence from the State's rebuttal argument certainly would not have resulted in a different verdict. (See *People v. Faysom* (1985), 131 Ill. App. 3d 517, 525, 475 N.E.2d 945.) Any error was harmless, particularly in light of the court's subsequent instruction to the jury that argument was not evidence and any argument not based on the evidence should be disregarded. *People v. Faysom*, 131 Ill. App. 3d at 525.

Of greater concern is the following comment made during the State's rebuttal:

"[T]his trial is supposed to be [about] the fact whether or not Francis Scott escaped and whether or not we can prove that. You have not heard everything. You know you haven't heard everything. I cannot comment on everything. I want you to use your reason."

Defendant urges these remarks improperly insinuated to the jury that

other incriminating evidence was being kept from them.

In *People v. Emerson* (1983), 97 Ill. 2d 487, 455 N.E.2d 41, cited by defendant, the prosecutor made a similar statement. Our supreme court observed the remark was improper and that it was error to suggest evidence of guilt existed which, for some reason, could not be brought before the jury, recognizing that such an insinuation, which left the jury free to speculate as to the nature of the misconduct, might be more prejudicial than erroneously admitted proof. (97 Ill. 2d at 497.) Based on that improper remark and several others made in closing argument, the *Emerson* court reversed that defendant's conviction; the errors were deemed prejudicial since guilt or innocence in that case depended entirely upon the credibility of an accuser and the accused. 97 Ill. 2d at 502.

■■ Unlike *Emerson*, the evidence of defendant's guilt in the case at bar was overwhelming. Despite the egregious nature of the prosecutor's insinuative remark, it cannot be said to have been so prejudicial as to require reversal. *People v. Cukojevic*, 103 Ill. App. 3d at 723.

IV

Defendant next maintains he was denied effective representation and assistance of counsel in violation of his constitutional rights. He asserts defense counsel failed to provide a meaningful adversarial testing of the State's case and preserve issues for review.

Defendant chose to represent himself *pro se* and "fired" the public defender immediately prior to trial. The circuit court nevertheless asked the public defender to remain as "stand by" counsel and did not terminate this arrangement or appoint the public defender to act as counsel for defendant, nor was such a substitution ever requested by defendant.

■■■ ■ The right of self-representation in criminal proceedings is constitutionally guaranteed. (*Faretta v. California* (1975), 422 U.S. 806, 45 L. Ed. 2d 562, 95 S. Ct. 2525.) One who knowingly and voluntarily chooses to represent himself cannot complain on appeal that his self-representation constituted a denial of effective assistance of counsel or a fair trial (*People v. Graves* (1984), 134 Ill. App. 3d 473, 477, 480 N.E.2d 1142; *People v. O'Neal* (1978), 62 Ill. App. 3d 146, 150, 379 N.E.2d 12), even where he conducts his defense to his own detriment (*People v. O'Neal*, 62 Ill. App. 3d at 150). If his self-representation is less effective than if he would have retained counsel, it is imputable to his decision to proceed without an attorney. (*People v. Tuczynski* (1978), 62 Ill. App. 3d 644, 651, 378 N.E.2d 1200.) Other-

wise, "a defendant could elect to defend himself and then secure a reversal because of his own incompetency." *People v. Richardson* (1959), 17 Ill. 2d 253, 260, 161 N.E.2d 268.

Defendant here urges that the public defender's "major role" at trial rose to the level of "lead counsel," and defendant merely "second-chaired" the case. The public defender gave the opening statement and closing argument, participated in the exhibit and jury instructions conferences, cross-examined two State's witnesses, and conducted the direct examination of a defense witness.

The circuit court was very careful throughout the trial, however, to indicate defendant was acting *pro se,* and only was assisted by the public defender. For example, when defendant asked the public defender to question a defense witness, the court granted the request; however, it first reminded the jury of defendant's self-representation, advising it "to assume that any questions that [the public defender] makes are the questions that [defendant] would present." The court also noted the public defender made the closing argument "on behalf of" defendant. Clearly, throughout the trial, the court treated defendant as a *pro se* litigant, and at no time dealt with the public defender as anything but advisory counsel.

More significantly, defendant never objected to his *pro se* role at trial, first raising it here as a result of his conviction. Further, there is no complaint that the public defender, when acting at the request of defendant, proceeded contrary to his instructions. Since defendant chose to represent himself, he must bear the consequences of his decision, including his failure to preserve various issues for appeal, and his claim of ineffective assistance of counsel must be rejected.

V

Defendant lastly contends, and the State concedes, that his sentence to an extended term of 12 years was improper and should be reduced. An extended sentence can be imposed if certain statutory factors are established (Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—3.2(b)); none of the requisite factors were presented during the sentencing phase of the instant case. Imposition of an extended term here was improper, and the sentence must be vacated.

Accordingly, defendant's conviction for escape will be affirmed; his sentence will be vacated and the cause remanded for resentencing.

Affirmed in part; vacated in part and remanded for resentencing.

DiVITO, P.J., and BILANDIC, J., concur.